ANTHEM INSURANCE COMPANIES, INC., f/k/a Associated Insurance Companies, Inc., d/b/a Anthem Blue Cross and Blue Shield, and Anthem Life Insurance Company, Appellants (Plaintiffs Below),

v.

TENET HEALTHCARE CORPORATION, f/k/a National Medical Enterprises, Inc., f/k/a Psychiatric Institutes of America et al., Appellees (Defendants below).

No. 10S01–9909–CV–501.

Supreme Court of Indiana.

June 8, 2000.

1228 ■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Thomas G. Stayton, Nancy G. Tinsley, Baker & Daniels, Indianapolis, IN, Attorneys for Appellants.

Susan Williams, Brown, Todd and Heyburn, New Albany, IN, Ethan M. Posner, Covington & Burling, Washington, D.C., Attorneys for Appellees.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

An Indiana insurance company sued the parent corporation of a chain of psychiatric hospitals alleging fraud in submitting insurance claims. The Indiana trial court found that the parent corporation did not have sufficient contacts with Indiana to be able to be sued here consistent with due process. Reviewing the question of law presented de novo, we find the require-ments for personal jurisdiction over the parent corporation, mandated by both Trial Rule 4.4(A) and the Due Process Clause, satisfied and reverse the judgment of the trial court.

### Background

On December 19, 1995, Anthem Insurance Companies, Inc.,[1] filed suit against forty-four related entities, including Tenet Healthcare Corporation ("Tenet"),[2] three wholly-owned subsidiaries of Tenet, and 40 other entities affiliated with Tenet ("providers")[3] alleging fraud in connection with claims submitted for psychiatric services rendered. Anthem contends that these companies engaged in a fraudulent scheme to obtain payments for psychiatric patients who did not need hospitalization or continued treatment. Specifically, Anthem claims that these health care providers obtained insurance payments of over $30 million by misrepresenting patient information to extend hospital stays longer than medically necessary.

On February 16, 1996, 40 of the Defendants moved to dismiss the claims for lack of personal jurisdiction. Included among these Defendants was Tenet (the parent corporation), National Medical Enterprises Hospitals, Inc., and National Medical Enterprises Psychiatric Properties, Inc., which are two wholly-owned subsidiaries of Tenet, and 37 providers. After discovery and a hearing on the motion to dismiss, the trial court granted the motion with respect to Tenet, NME Hospitals, and NME Psychiatric Properties. Anthem appealed the

---

1. Anthem Life Insurance Company is a co-plaintiff in this case. Anthem Insurance Companies, Inc., was formerly known as Associated Insurance Companies, Inc., and does business as Anthem Blue Cross and Blue Shield. Anthem Insurance Companies, Inc., is incorporated under Indiana law with its principal place of business in Indianapolis. Anthem Life Insurance Company is incorporated under Texas law with its principal place of business in Texas. In this opinion, the companies will simply be referred to as Anthem.

2. Tenet was formerly known as National Medical Enterprises, Inc., but changed its name in 1995 to Tenet Healthcare Corporation and will be referred to as Tenet throughout this opinion.

3. These are entities within the Tenet corporate family that own and operate hospitals or other health care facilities that provide psychiatric services.

dismissal of Tenet and NME Hospitals.[4] The Court of Appeals affirmed the dismissal of Tenet, but reversed the dismissal of NME Hospitals. *See Anthem Insurance Cos. v. Tenet Healthcare Corp.*, 709 N.E.2d 1060, 1069 (Ind.Ct.App.1999). Judge Robb dissented, believing that there were sufficient contacts to establish general personal jurisdiction over Tenet. *Id.* at 1069–70. This Court granted transfer to clarify the criteria for evaluating personal jurisdiction questions and the standard for reviewing trial court personal jurisdiction decisions.

## Discussion

### I

*Personal Jurisdiction Under Indiana Law.* Personal jurisdiction is "a court's power to bring a person into its adjudicative process" and render a valid judgment over a person. Black's Law Dictionary 857 (7th ed.1999); *accord Mishler v. County of Elkhart*, 544 N.E.2d 149, 151 (Ind. 1989) ("To render a valid judgment, a court must possess two forms of jurisdiction: jurisdiction over the subject matter and jurisdiction over the parties."). Traditionally, courts relied on consent, service of process within a jurisdiction, and domicile as bases for asserting jurisdiction over a person, but the United States Supreme Court, in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), formulated a new standard for personal jurisdiction based on the defendant's contacts with a forum state and notions of fairness and reasonableness.

■ Because Indiana state trial courts are courts of general jurisdiction, jurisdiction is presumed.[5] *See Mid–States Aircraft Engines, Inc. v. Mize Co.*, 467 N.E.2d 1242, 1247 (Ind.Ct.App.1984); *Weenig v. Wood*, 169 Ind.App. 413, 419–20, 349 N.E.2d 235, 240 (1976), *transfer denied.* Therefore, the plaintiff need not allege jurisdiction in its complaint. *Weenig*, 169 Ind.App. at 420, 349 N.E.2d at 240. A challenge to personal jurisdiction may be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss. *See* Ind. Trial Rules 8(C) & 12(B)(2); *see also Lee v. Goshen Rubber Co.*, 635 N.E.2d 214, 215 (Ind.Ct. App.1994), *transfer denied.* In either case, once the party contesting jurisdiction, usually the defendant, challenges the lack of personal jurisdiction, the plaintiff must present evidence to show that there is personal jurisdiction over the defendant. *See Brokemond v. Marshall Field & Co.*, 612 N.E.2d 143, 145 (Ind.Ct.App.1993). However, the defendant bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint. *Suyemasa v. Myers*, 420 N.E.2d 1334, 1340 (Ind.Ct.App. 1981).

### A

■ *Trial Rule 4.4(A) – Indiana's Long–Arm Statute.* Any discussion of personal jurisdiction in Indiana must first start with Trial Rule 4.4(A), Indiana's equivalent of a "long-arm statute."[6] This trial rule provides a limit on the exercise of jurisdiction over nonresident defendants. There are two types of long-arm statutes: (1) those which direct the court to exercise

---

**4.** Anthem did not appeal the decision to dismiss NME Psychiatric Properties, but the 37 providers appealed the trial court's decision to deny the motion to dismiss as to them. The Court of Appeals affirmed the trial court's decision in a separate not-for-publication opinion. *See NME Psychiatric Hosps., Inc. v. Anthem Ins. Cos.*, 712 N.E.2d 54 (Ind.Ct.App. 1999) (unpublished table decision).

**5.** The same is not true for federal courts, which are of limited jurisdiction. In federal courts, the plaintiff must plead and prove jurisdiction if it is challenged. *See Oddi v. Mariner–Denver, Inc.*, 461 F.Supp. 306, 308, 310 (S.D.Ind.1978).

**6.** Although Indiana has a trial rule, it performs the same function as a long-arm statute and will be referred to throughout this opinion as either Trial Rule 4.4(A) or Indiana's long-arm statute.

jurisdiction to the extent allowed by the United States and state constitutions and (2) "enumerated act" statutes, which direct the court to assert jurisdiction over defendants who commit any act listed in the statute in the state. *See* 16 James Wm. Moore et al., *Moore's Federal Practice* § 108.60[1] (3d ed.1999).

Indiana's statute is an "enumerated act" statute. Typically, under such a statute, courts must proceed with a two-step analysis. First, the court must determine if the defendant's contacts with the forum state fall under the long-arm statute.[7] Second, if they do, the court must then determine whether the defendant's contacts satisfy federal due process analysis.

The Court of Appeals has frequently recited " 'that Indiana Trial Rule 4.4 is intended to extend personal jurisdiction of courts sitting in this state . . . to the limits permitted under the Due Process Clause of the Fourteenth Amendment.' " *Griese–Traylor Corp. v. Lemmons*, 424 N.E.2d 173, 179 (Ind.Ct.App.1981) (quoting *Valdez v. Ford, Bacon & Davis, Texas, Inc.*, 62 F.R.D. 7, 14 (N.D.Ind.1974)), *transfer denied; accord Conseco, Inc. v. Hickerson*, 698 N.E.2d 816, 818 (Ind.Ct.App.1998); *Yates–Cobb v. Hays*, 681 N.E.2d 729, 732 (Ind.Ct.App.1997); *North Texas Steel Co. v. R.R. Donnelley & Sons Co.*, 679 N.E.2d 513, 518 (Ind.Ct.App.1997), *transfer denied; Torborg v. Fort Wayne Cardiology, Inc.*, 671 N.E.2d 947, 949 (Ind.Ct.App. 1996); *Rosowsky v. University of Colorado*, 653 N.E.2d 146, 148 (Ind.Ct.App.1995), *transfer denied; Fidelity Financial Servs., Inc. v. West*, 640 N.E.2d 394, 397

(Ind.Ct.App.1994); *Brokemond*, 612 N.E.2d at 145; *Freemond v. Somma*, 611 N.E.2d 684, 688 (Ind.Ct.App.1993), *transfer denied*. The majority of these opinions then proceed directly to a discussion of the limits of federal due process and the accompanying federal and state case law without first determining whether the conduct in question falls under Indiana Trial Rule 4.4(A). *See Hickerson*, 698 N.E.2d at 818; *Yates–Cobb*, 681 N.E.2d at 732; *North Texas Steel*, 679 N.E.2d at 518; *Torborg*, 671 N.E.2d at 949; *Brokemond*, 612 N.E.2d at 145; *Griese–Traylor*, 424 N.E.2d at 180.

■ Although the result in many of these cases would likely have been the same, this one-step analysis has the effect of ignoring T.R. 4.4(A).[8,9] If the Indiana long-arm statute were intended to be coextensive with the limits of personal jurisdiction under the Due Process Clause, it could be written with general language, such as the "any constitutional basis" statutes used in several other states. Most courts with "enumerated act" statutes, and indeed the correct approach under Indiana Trial Rule 4.4(A) is to, engage in a two-step analysis, first determining whether the conduct falls under the long-arm statute and then whether it comports with the Due Process Clause as interpreted by the United States Supreme Court and courts in this state. *See Mart v. Hess*, 703 N.E.2d 190, 192–93 (Ind.Ct.App.1998); *Fidelity Financial*, 640 N.E.2d at 396–97; *Lee*, 635 N.E.2d at 215–16; *see also FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir.1990); *Joseph M. Coleman & Assocs.*,

---

**7.** Trial Rule 4.4(A) applies to nonresidents or residents who have left the state. The court may still use the traditional bases discussed above to assert jurisdiction over a defendant including consent, service of process within the state, and domicile in the state.

**8.** We acknowledge that we denied transfer in several of these cases.

**9.** Many of the decisions rely on a comment to the rule which reads, "The adoption of this rule will expand the in personam jurisdiction

of the courts of this state to the limits permitted under the Due Process Clause of the Fourteenth Amendment." Civil Code Study Commission Comments to Trial Rule 4.4. The better interpretation of this comment is "that the specific enumerated act provisions of the statute . . . be broadly interpreted so that if the language of the statute rationally can be construed to reach the defendant's situation, the statute should be so construed." Moore et al., *supra*, § 108.60[3][a] (citing Robert Leflar et al., *American Conflicts of Law* 103 (4th ed.1986)).

*Ltd. v. Colonial Metals,* 887 F.Supp. 116, 118–19 n. 2 (D.Md.1995); *Green v. Advance Ross Elecs. Corp.,* 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203, 1206–07 (1981); *Lincoln v. Seawright,* 104 Wis.2d 4, 310 N.W.2d 596, 599–600 (1981).

Indiana Trial Rule 4.4(A) provides:

Acts Serving as a Basis for Jurisdiction. Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state;

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

(5) owning, using, or possessing any real property or an interest in real property within the state;

(6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made;

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state; or

(8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state.

If a person's contacts with Indiana fall into any of the eight categories described above, Trial Rule 4.4(A) is satisfied.

## B

*Due Process.* After finding a basis for jurisdiction under the long-arm statute, courts must examine whether asserting jurisdiction violates the Due Process Clause of the Fourteenth Amendment. *Cf.* Moore et al., *supra,* § 108.11[2] ("A court that exercises jurisdiction over the defendant in the absence of a proper jurisdictional basis has violated the defendant's right not to be deprived of property without due process and, thus, its judgment is invalid."). The modern-day approach to personal jurisdiction was established in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In *International Shoe,* the United States Supreme Court stated that a person must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The Court went on to note that the existence of personal jurisdiction depended on the nature and quality of the contacts with the forum, not a "mechanical" test. *International Shoe,* 326 U.S. at 318–19, 66 S.Ct. 154 ("Whether due process is satisfied must depend ... upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the Due Process Clause to insure."). In *Hanson,* the Supreme Court added a new component to the mix, stating that contacts were sufficient to establish personal

jurisdiction only if there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. 1228. In other words, the contacts that are examined must be the purposeful acts of the defendant, not the acts of the plaintiff or any third parties.

The language in *International Shoe* has been interpreted to create a two-part test to determine whether personal jurisdiction exists under the Due Process Clause. First, courts must look at the contacts between the defendant and the forum state to determine if they are sufficient to establish that the defendant could "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted); *accord Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). If the contacts are sufficient, then the court must evaluate whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" by weighing a variety of interests. *See Burger King*, 471 U.S. at 476, 105 S.Ct. 2174.

There are two types of contacts that may be sufficient to establish jurisdiction: (1) defendant's contacts with the forum state that are unrelated to the basis of the lawsuit, and (2) defendant's contacts that are related to the subject matter of the lawsuit. This concept, first established in *International Shoe,* was expanded upon in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 414 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In *Helicopteros,* the Court first adopted the terms long used in the Federal Court of Appeals to describe these contacts: general and specific personal jurisdiction.

### B–1

 *General Personal Jurisdiction.* General personal jurisdiction refers to the ability to be sued for any claim in a state. *See* Black's Law Dictionary 856 (7th ed.

1999) ("A court's authority to hear all claims against a defendant, at the place of the defendant's domicile or the place of service [of process], without any showing that a connection exists between the claims and the forum state."). In order to establish general personal jurisdiction, the court must find continuous and systematic contacts with the forum state such that the defendant could reasonably foresee being haled into court in that state for any matter. However, the claim need not arise from the defendant's contacts with the state.

The United States Supreme Court has addressed the issue of general personal jurisdiction in two cases, *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 447–49, 72 S.Ct. 413, 96 L.Ed. 485 (1952), and *Helicopteros,* 466 U.S. at 414–15, 104 S.Ct. 1868. In *Perkins,* the Court firmly established that personal jurisdiction over a defendant for a cause unrelated to the defendant's contacts with the forum state may exist if the contacts are "substantial, ... continuous and systematic." 342 U.S. at 446–47, 72 S.Ct. 413. The Court looked at the strength and length of the contacts with the forum state to determine that a Philippine corporation could be sued in Ohio for a cause of action unrelated to its Ohio contacts when the corporation had its temporary headquarters in Ohio and had been conducting all of its activities in Ohio since the outbreak of World War II. *Id.* at 448, 72 S.Ct. 413. In *Helicopteros,* the Supreme Court determined that a Columbian aviation services company was not subject to general personal jurisdiction in Texas courts when its contacts with Texas were the Columbian company's continuous purchasing activity and accompanying training. *Id.* at 416, 104 S.Ct. 1868. The Court further made clear that the contacts required for general personal jurisdiction were greater than those needed to establish specific personal jurisdiction. *See Helicopteros,* 466 U.S. at 414–15, 104 S.Ct. 1868.

The Indiana Court of Appeals has also addressed what contacts are necessary to obtain general personal jurisdiction over a defendant in Indiana. In *North Texas Steel Co. v. R.R. Donnelley & Sons Co.*, 679 N.E.2d 513, 519 (Ind.Ct.App. 1997), *transfer denied*, the court, in determining that no general personal jurisdiction existed over the defendant, discussed some contacts that may constitute general personal jurisdiction, including: (1) direct advertising and solicitation of Indiana residents, (2) offices in Indiana, (3) employees in Indiana, (4) agents in Indiana, and (5) property in Indiana.[10] The court also noted that "[c]ourts are more demanding when jurisdiction is sustained only on a basis of general jurisdiction." *Id.* at 518. This echoed *Brokemond v. Marshall Field & Co.*, 612 N.E.2d 143 (Ind.Ct.App.1993), where the court stated that if the defendant's contacts with a forum state were unrelated to the lawsuit, they "must be fairly extensive to confer jurisdiction." *Id.* at 145. In that case, the court determined that advertising, delivering merchandise, collecting Indiana sales tax, and distributing credit cards in Indiana were insufficient to obtain general personal jurisdiction over the defendant. *Id.* at 146. In sum, an Indiana court has general jurisdiction over a defendant if the defendant's contacts with Indiana are substantial, continuous, extensive, and systematic, which Indiana courts have interpreted to include, among other things, having offices in Indiana, being incorporated in Indiana, and having employees in Indiana.

### B-2

*Specific Personal Jurisdiction.* Specific personal jurisdiction is "[j]urisdiction that stems from the defendant's having certain minimum contacts with the forum state so that the court may hear a case whose issues arise from those minimum contacts." Black's Law Dictionary 857 (7th ed.1999). In other words, the defendant's isolated contacts with a state that are not enough to establish general personal jurisdiction may be sufficient to allow jurisdiction over any incidents related to those contacts. In order to establish specific personal jurisdiction over a defendant, the defendant must have purposefully established contact with the forum state and the basis of the lawsuit must arise out of these contacts. *See Burger King*, 471 U.S. at 472, 105 S.Ct. 2174.

Contacts are "acts physically performed in the forum state and acts performed outside the forum state that have an effect within the forum." Moore et al., *supra*, § 108.42[2][a]. The Supreme Court has held that a single contact with a forum state may be enough to establish specific personal jurisdiction. In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the defendant, an Arizona life insurance company, sold an insurance policy to plaintiff's son, a California resident. *Id.* at 221–23, 78 S.Ct. 199. The policy was renewed through the mail, but the defendant had no offices in California and had not conducted any other business in California. The Supreme Court stated that a single act can support jurisdiction so long as it creates a "substantial connection" with the forum state and the suit is based on that connection. *See id.* at 223, 78 S.Ct. 199. However, the act must be purposeful, not a "random, fortuitous, or attenuated contact[ ], or . . . the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (citations and internal quotations omitted).

As the foregoing suggests, the analysis of the contacts for specific personal jurisdiction is determined on a case-by-case basis. *See Mart*, 703 N.E.2d at 192–93 (jurisdiction existed where former wife sent defamatory letters to ex-husband's new wife's workplace, but had no visits or

---

10. In *North Texas Steel,* the Court of Appeals went on to hold that Indiana had specific personal jurisdiction over the defendant. *See* 679 N.E.2d at 519. We express no opinion as to that conclusion.

other contact with Indiana); *North Texas Steel,* 679 N.E.2d at 519 (specific personal jurisdiction existed where the defendant had manufactured and shipped its product to Indiana for use by an Indiana company); *Harold Howard Farms v. Hoffman,* 585 N.E.2d 18, 20–22 (Ind.Ct.App.1992) (Michigan horse breeder's advertisement in Michigan journal that Indiana horse breeder received, and telephone calls and business trips to Indiana were insufficient to establish personal jurisdiction); *Baseball Card World, Inc. v. Pannette,* 583 N.E.2d 753, 755–56 (Ind.Ct.App.1991) (no jurisdiction where Pennsylvania card business's contacts with Indiana were phone conversations with Indiana company and mailing checks to Indiana company), *transfer denied; Woodmar Coin Ctr., Inc. v. Owen,* 447 N.E.2d 618, 620–21 (Ind.Ct. App.1983) (jurisdiction existed where defendant initiated relationship with Indiana resident with two out-of-state phone calls, and substantial negotiations and a contract were made with the Indiana resident), *transfer denied.*

■ Things to consider when evaluating the defendant's contacts with the forum state are: (1) whether the claim arises from the defendant's forum contacts, (2) the overall contacts of the defendant or its agent with the forum state, (3) the foreseeability of being haled into court in that state, (4) who initiated the contacts, and (5) whether the defendant expected or encouraged contacts with the state. In sum, when evaluating issues of specific personal jurisdiction, the court must examine the quality and nature of the activities taking place within the state to determine if they are related to the basis of the lawsuit and the result of deliberate conduct by the defendant. *See Fetner v. Maury Boyd & Assocs., Inc.,* 563 N.E.2d 1334, 1337 (Ind.Ct.App.1990), *transfer denied.*

### B–3

*"Fair Play and Substantial Justice."*
Once contacts sufficient to establish personal jurisdiction, be it general or specific, are found, the court must further decide whether asserting personal jurisdiction over the defendant "offend[s] traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154 (citations and internal quotations omitted). Generally, this is not as great an issue in general personal jurisdiction cases because the requirement for continuous and systematic contacts with the state ensures that jurisdiction over a particular defendant is reasonable. Nonetheless, this reasonableness analysis is the final step in evaluating whether there is personal jurisdiction over the defendant under the federal Due Process Clause.

The United States Supreme Court has set out five factors that must be balanced to determine whether the assertion of jurisdiction is reasonable and fair. They are: "(1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenience and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174 (numbering added) (citations and internal quotations omitted). These interests must be balanced and weighed to make certain that asserting jurisdiction is fair in a particular case.

This analysis only occurs if there are sufficient contacts first to establish jurisdiction. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559 (1980). However, the Supreme Court made clear in *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 116, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), that the fairness inquiry is separate from the contacts question and may be used to defeat jurisdiction even if the defendant has sufficient contacts with the forum state. *Id.* at 121–22, 107 S.Ct. 1026 ("[T]his case fits within the rule that 'minimum require-

ments inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.' ") (Stevens, J., concurring) (quoting *Burger King,* 471 U.S. at 477–78, 105 S.Ct. 2174). After the plaintiff establishes that there are minimum contacts, the defendant then carries the burden of proving that asserting jurisdiction is unfair and unreasonable. *See Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.")

These same interests have been recognized by the Indiana Court of Appeals. *See North Texas Steel,* 679 N.E.2d at 519; *Fidelity Financial,* 640 N.E.2d at 398–99; *Brokemond,* 612 N.E.2d at 146. To determine if the exercise of personal jurisdiction is reasonable in a particular case, the Court of Appeals has also looked at " 'the relationship among the defendant, the forum, and the litigation,' " the preservation of constitutional principles of interstate federalism, and the existence of an alternative forum to hear the dispute. *Griese–Traylor,* 424 N.E.2d at 180 (quoting *Shaffer,* 433 U.S. at 204, 97 S.Ct. 2569).

C

*Appellate Review of Questions of Personal Jurisdiction.* The decisions of the Court of Appeals are in conflict as to the standard of review of trial court decisions on personal jurisdiction. In this case, the Court of Appeals applied an abuse of discretion standard to the trial court's ruling, stating that the "decision whether to grant a motion to dismiss based on lack of personal jurisdiction lies within the sound discretion of the trial court." *Anthem Ins. Cos. v. Tenet Healthcare Corp.,* 709 N.E.2d 1060, 1064 (Ind.Ct.App.1999); *accord Torborg,* 671 N.E.2d at 949; *Ryan v. Chayes Virginia, Inc.,* 553 N.E.2d 1237, 1239 (Ind.

Ct.App.1990), *transfer denied.* However, other Court of Appeals decisions have held that personal jurisdiction is a question of law to be reviewed de novo. *D'Iorio v. D'Iorio,* 694 N.E.2d 775, 777–78 (Ind.Ct.App.1998); *North Texas Steel,* 679 N.E.2d at 519; *Fidelity Financial,* 640 N.E.2d at 396.

■■■ "Judicial discretion is the option which the judge may exercise between the doing and the not doing of a thing, the doing of which cannot be demanded as an absolute right of the party asking it to be done." *McFarlan v. Fowler Bank City Trust Co.,* 214 Ind. 10, 14, 12 N.E.2d 752, 754 (1938). "Discretion, in its true sense, then, contemplates situations where the court upon finding certain facts or circumstances *may,* rather than *must,* act in a prescribed fashion." 4A Kenneth M. Stroud, *Indiana Practice* § 12.8 (2d ed.1990) (emphasis in original). The existence of personal jurisdiction over a defendant is a constitutional requirement to rendering a valid judgment, mandated by the Due Process Clause of the Fourteenth Amendment. Personal jurisdiction is a question of law and, as such, it either exists or does not. *See North Texas,* 679 N.E.2d at 519; *Freemond,* 611 N.E.2d at 687. The question of its existence is not entrusted to a trial court's discretion.

■■■ The Court of Appeals in this case relied on *Mid–States Aircraft Engines, Inc. v. Mize Co.,* 467 N.E.2d 1242, 1247 (Ind.Ct.App.1984), as the basis of its abuse of discretion standard of review. In that case, the court stated that "[t]he *procedure* by which a trial court reaches its decision on a T.R. 12(B)(2) challenge to in personam jurisdiction is within the sound discretion of the trial court." *Id.* (emphasis added). However, the issue here is not the procedure used by the trial court, but the result reached by the trial court. The Court of Appeals and indeed, this Court, evaluate questions of law de novo and owe no deference to a trial court's determination of such questions. *See* Stroud, *supra,* § 12.3, *Budden v. Board of School*

*Comm'rs,* 698 N.E.2d 1157, 1160 (Ind. 1998). Therefore, the de novo standard is employed when appellate courts review questions of whether personal jurisdiction exists.[11]

■ It is worth pausing to distinguish between findings of fact and conclusions of law in this context. The legal question of whether personal jurisdiction exists given a set of facts is reviewable de novo. However, the presence of personal jurisdiction is based on the existence of jurisdictional facts. When determining these facts, the trial court is performing its classic fact-finding function, often evaluating the character and truthfulness of witnesses, and is in a better position to determine these issues than a reviewing court. For this reason, a trial court's findings of jurisdictional facts are generally reviewed for clear error. *See Fidelity Financial,* 640 N.E.2d at 396.[12] Because the Court of Appeals used the incorrect standard of review to evaluate the legal issue of whether the trial court had jurisdiction over Tenet and NME Hospitals, we must now reevaluate those issues.

## II

■ *General Personal Jurisdiction over Tenet.* Anthem argues that Tenet's contacts [13] were sufficient to establish general personal jurisdiction over Tenet. Tenet responds by placing its contacts into several categories and then discussing how each category itself is insufficient to establish jurisdiction. Anthem contends that: (1) Tenet sent employees to Indiana to conduct business with four Indiana psychiatric hospitals that were operated by its subsidiaries; (2) Tenet transacted business with Indiana entities spending $385,000 since 1990; (3) Tenet was involved in a several million dollar settlement with the State of Indiana; (4) Tenet previously defended a lawsuit in Indiana; (5) Tenet held itself out as doing business in Indiana through a web page and other business listings; and (6) Tenet had contact with Indiana regulatory agencies. Tenet disputes jurisdiction by pointing to the fact that: (1) Tenet is a Nevada corporation with its headquarters in California; (2) it had no employees in Indiana; (3) it owned no property and held no bank accounts in Indiana; (4) it was not registered to do business in Indiana; and (5) none of its directors or officers reside in Indiana.

■ As discussed in Part I–A, *supra,* when evaluating questions of personal jurisdiction, the first line of inquiry is Trial Rule 4.4(A). Rule 4.4(A) reads:

**11.** The use of the de novo standard of review for questions of personal jurisdiction is also supported by cases in other jurisdictions. *See, e.g., Latshaw v. Johnston,* 167 F.3d 208, 210–11 (5th Cir.1999); *Steel Warehouse v. Leach,* 154 F.3d 712, 714 (7th Cir.1998).

**12.** The trial court may decide the jurisdictional facts using only a paper record, in which case it appears that the appellate court is in as good a position as the trial court to determine the existence of the jurisdictional facts, and should review the trial court's decision de novo. *Cf. Houser v. State,* 678 N.E.2d 95, 98 (Ind.1997) ("Because both the appellate and trial courts are reviewing the paper record submitted to the magistrate, there is no reason for appellate courts to defer to the trial court's finding that a substantial basis existed for issuing the warrant.").

**13.** The parties dispute what contacts are relevant in determining the existence of personal jurisdiction. Tenet claims that only its con-

tacts when the complaint was filed, in December 1995, should count when determining jurisdiction, relying on *Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 52 (2d Cir.1991). Anthem contends that the trial court may look at the contacts occurring during the course of the alleged fraudulent relationship up until the complaint was filed, citing *Simpson v. Quality Oil Co.,* 723 F.Supp. 382, 391 n. 6 (S.D.Ind.1989) ("[P]ost-tort activity has a one-way ratchet effect. Nonresident defendants cannot defeat personal jurisdiction by severing all contact with the forum state after the [alleged bad act]. However, they can tip the balance of factors toward personal jurisdiction by expanding their contact with the forum after the [alleged bad act]."). We agree with Anthem that nonresident defendants should not be allowed to escape personal jurisdiction by ending their contact with the forum state after they commit a wrong.

Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent: (1) doing any business in this state; . . . .

Tenet's activities, including several business trips to Indiana and transactions with Indiana businesses, including law firms, storage companies, and computer companies, clearly satisfy this requirement.[14]

Next, we must review whether Tenet's contacts with Indiana are sufficient to satisfy the Due Process Clause of the Fourteenth Amendment. First, to establish general personal jurisdiction, Tenet's contacts with Indiana must be examined to determine whether they are "continuous and systematic."[15] Tenet challenges its contacts with Indiana in several ways.

■■■ Tenet first claims that its contacts with Indiana are insufficient given that they constitute only a small percentage of its nationwide business. In support of this proposition, Tenet relies on *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1045–46 (2d Cir.1990), and *Marsin Medical International, Inc. v. Bauhinia, Ltd.*, 948 F.Supp. 180, 186 (E.D.N.Y.1996). Neither of these cases is binding authority on Indiana courts. Although the percentage of its nationwide business that is conducted in Indiana may be a factor to consider in determining whether there is personal jurisdiction over a defendant in this state, it is by no means the only or dominant factor. Here, given the extent and nature of Tenet's contacts with Indiana, this factor is not of overwhelming significance. *Compare Gallert v. Courtaulds Packaging Co.*, 4

F.Supp.2d 825, 831 (S.D.Ind.1998) (finding general jurisdiction where defendant argued that its sales in Indiana represented .0055% of its business), *with Charlesworth v. Marco Mfg. Co.*, 878 F.Supp. 1196, 1201 (N.D.Ind.1995) (finding no personal jurisdiction where defendant's sales in Indiana were less than .50% of its total).

■■■ Tenet also claims that its contacts with Indiana are insufficient to establish personal jurisdiction over it based on its examination of these contacts in isolation, not as a whole, and reliance on cases in which the defendant had only one type of contact with the forum state. *See, e.g., Asarco, Inc. v. Glenara Ltd.*, 912 F.2d 784, 787 (5th Cir.1990) (only contacts were port calls); *Travelers Indemnity Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 833 (5th Cir.1986) (only contacts were listing as a client of a forum state law firm and listing as defendants in other suits). Tenet breaks down its contacts with Indiana into four categories – employee visits, payments to Indiana businesses, contacts with the Indiana government, and the maintenance of a website – and attacks each category as insufficient. However, Tenet's contacts with Indiana must be examined together to determine whether they are sufficient to establish general personal jurisdiction. *Cf. Hotmix & Bituminous Equip., Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 827 (Ind.Ct.App.1999). Although any one set of contacts may not be enough to establish general personal jurisdiction over Tenet, when examined together, these groups of contacts show that Tenet has continuous and systematic contacts with Indiana.

Although Tenet does not meet the traditional bases for establishing general personal jurisdiction such as offices or property in Indiana, its contacts with Indiana are

**14.** Tenet contends that its defense of a prior lawsuit and settlement do not constitute "doing business" under Trial Rule 4.4(A)(1). Assuming without deciding that this is correct, those contacts are not necessary to establish that Tenet was "doing business" in Indiana.

**15.** Because Tenet's contacts are not related to the subject matter of the lawsuit, there is no basis for specific personal jurisdiction.

nonetheless "continuous and systematic." Tenet made 28 business trips to Indiana, including sending its chief executive officer and several vice-presidents. These trips involved executive-level employees from many different departments and included real estate transactions, recruiting, litigation, interviewing, and operations. Tenet contracted with several Indiana businesses during this time, including consulting firms, storage companies, law firms, and computer services. Also, Tenet corresponded with Indiana entities concerning Medicare and Medicaid audits and requested hearings with the Indiana Family and Social Services Administration's Office of Medicaid Policy and Planning. In many of these proceedings, the hospitals were referred to as wholly-owned subsidiaries of Tenet,[16] and concerns of the parent corporation, Tenet, were discussed. This shows Tenet purposefully availing itself of the privileges and powers of Indiana law. In addition, Tenet responded to a previous lawsuit filed in Indiana and entered into a settlement agreement with the State of Indiana in October, 1994. Looking at all these contacts together, and not piecemeal as Tenet does, it is clear that Tenet has enough continuous and systematic contacts with Indiana to establish general personal jurisdiction.

■ The final step to ensure compliance with the Due Process Clause is evaluating whether the exercise of general personal jurisdiction over Tenet "offend[s] traditional notions of fair play and substantial justice." To make this determina-

tion, we look at the five factors from *Burger King:* (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenience and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. 471 U.S. at 476–77, 105 S.Ct. 2174.

■ Given Tenet's contacts with Indiana, its size, and the fact that it has already defended one lawsuit in Indiana, it does not appear it will be too great a burden on Tenet to defend another suit in this state. Furthermore, Indiana has an interest in seeing its residents and corporations protected from fraud. Finally, it is unlikely that any other state will have jurisdiction over all of the parties to the transaction. Therefore, this suit can be most efficiently resolved in Indiana. Given these concerns, we cannot say that the exercise of general personal jurisdiction over Tenet "offend[s] traditional notions of fair play and substantial justice." [17]

### III

*Specific Personal Jurisdiction over NME Hospitals.* Anthem also asserts that specific personal jurisdiction may be established over NME Hospitals, Tenet's subsidiary, based on letters and telephone calls to Anthem in order to secure payments from Anthem. NME Hospitals does not dispute these calls and correspon-

---

16. The records refer to National Medical Enterprises, Inc., which was the previous name of Tenet.

17. Anthem also argued that it was entitled to jurisdiction over Tenet based on the contacts of its subsidiaries with Indiana. Although the contacts of a subsidiary may be aggregated with the contacts of the parent to achieve personal jurisdiction over the parent, this is only possible in the narrow instances "[w]here a parent utilizes its subsidiary in such a way that an agency relationship can be perceived ... [or] the parent has greater control over the subsidiary than normally associ-

ated with common ownership and directorship or where the subsidiary is merely an empty shell." *Wesleyan Pension Fund, Inc. v. First Albany Corp.,* 964 F.Supp. 1255, 1261 (S.D.Ind.1997) (citations and internal quotations omitted). This does not appear to be the case here and given the resolution of the general personal jurisdiction question, this issue need not be addressed. For the same reason, we do not address Anthem's claim that the trial court abused its discretion by failing to allow Anthem to complete discovery on Tenet's parent/subsidiary relationships.

dences, but claims that they are insufficient to establish specific personal jurisdiction because "[t]hese fortuitous phone calls and letters are not enough to support personal jurisdiction over the owner of these Texas facilities." The parties stipulated to the following:

> On numerous occasions from January 1, 1989, through December 31, 1991, employees working at health care facilities owned by Nonresident Providers sent correspondences and made telephone calls to Associated Insurance Companies, Inc., in the State of Indiana regarding the processing and payment of health insurance claims submitted to Plaintiffs for health care services performed wholly outside of Indiana.

■ First, NME Hospitals's contacts must fall under Indiana's long-arm statute, Trial Rule 4.4(A). It appears that NME Hospitals's phone calls and correspondence were in furtherance of its business in Indiana and therefore, the contacts could constitute "doing any business" in Indiana. *See* Ind. Trial Rule 4.4(A)(1).

Next, because there are not sufficient contacts to support general personal jurisdiction, NME Hospitals's contacts must satisfy the due process requirements of specific personal jurisdiction: they must be related to the cause of action and the defendant must have purposefully availed itself of the jurisdiction of the forum state. In support of its argument that these phone calls and letters are not enough to establish personal jurisdiction, NME Hospitals relies on *Rosowsky v. University of Colorado,* 653 N.E.2d 146, 149 (Ind.Ct. App.1995), *transfer denied,* and *Baseball Card World, Inc. v. Pannette,* 583 N.E.2d 753, 755–56 (Ind.Ct.App.1991), *transfer denied,* in which the Court of Appeals held in each case that personal jurisdiction may not be based solely on "interstate letters and calls."

Here, however, the phone calls and letters are the very means by which Anthem claims that NME Hospitals perpetrated its fraud. As the United States Supreme Court observed in *Burger King,* defendants should not be able to escape the consequences of their actions by not physically entering a jurisdiction. 471 U.S. at 467, 105 S.Ct. 2174 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can deter personal jurisdiction there."). The Court of Appeals also recognized this doctrine in *Mullen v. Cogdell,* 643 N.E.2d 390, 398 (Ind.Ct.App.1994), *transfer denied,* in which the court found jurisdiction over a defendant whose only contacts with Indiana were letters and phone calls. The court enjoyed jurisdiction in that case because the calls and letters were made in furtherance of a fraudulent real estate deal. "A defendant should expect to answer in the state of residence of those he defrauded when correspondences and telephone calls were purposefully made to that state in furtherance of the fraud." *Rosowsky,* 653 N.E.2d at 149 n. 1. We agree with the Court of Appeals that "NME Hospitals purposefully availed itself of the benefits and responsibilities of doing business in Indiana when it chose to directly contact Anthem regarding insurance payments." *Anthem Ins. Cos. v. Tenet Healthcare Corp.,* 709 N.E.2d 1060, 1069 (Ind.Ct.App. 1999). There are sufficient contacts to establish specific personal jurisdiction over NME Hospitals in Indiana.

■ Finally, we must balance the fairness factors to determine if the exercise of specific personal jurisdiction is reasonable in this case. Although there will be a substantial burden on NME Hospitals, this factor is outweighed by Indiana's interest in preventing fraudulent conduct against its citizens, Anthem's interest in obtaining a remedy for the alleged fraud, and the judicial system's interest in avoiding multiple litigation of the same facts. Therefore, the exercise of specific personal jurisdiction over NME Hospitals complies with Indiana Trial Rule 4.4(A) and the Due Process Clause.

*Conclusion*

The judgment of the trial court is reversed and this case is remanded for proceedings consistent with this opinion.

SHEPARD, C.J., and RUCKER, J., concur.

DICKSON, J., concurs as to Parts II and III, and concurs in result as to Part I.

BOEHM, J., not participating.