**PURDUE RESEARCH FOUNDATION,**
Plaintiff,

v.

**SANOFI–SYNTHELABO, S.A., Sanofi-Synthelabo, Inc., and STWB, Inc.,**
Defendants.

No. 4:02 cv 4 AS.

United States District Court,
N.D. Indiana,
Hammond Division at Lafayette.

June 5, 2002.

William P. Kealey, Bradley J. Glass, Lafayette, IN, for Plaintiff.

David O. Tittle, Meggan L. Ehret, Indianapolis, IN, Albert J. Breineisen, Thomas J. Meloro, Michael K. Levy, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

### I. Procedural History

This cause is before this court on Defendants Sanofi–Synthelabo S.A., Sanofi–Synthelabo, Inc., and STWB, Inc.'s motion to dismiss for lack of personal jurisdiction, filed February 14, 2002. Plaintiff, Purdue Research Foundation, filed a brief in opposition to the motion on March 26, 2002, and Defendants replied to that brief on April 9, 2002. As the parties have fully briefed the issues, this court is now ready to rule.

### II. Facts

Purdue Research Foundation entered into a Cooperative Research Agreement with Sterling Drug, Inc. on December 1, 1987, for a term of five (5) years. During the period of that agreement, the parties worked on the development of an anti-viral chemical compound called pleconaril. Sterling Drug, Inc. was succeeded by Sterling Winthrop, Inc. In 1994, the intellectual property related to the pharmaceutical business of Sterling Winthrop, Inc. was purchased by Sanofi (a French corporation; hereafter "Sanofi France") and distributed between Sanofi Winthrop, Inc., a Delaware corporation, and Sanofi France. The intellectual property interests in pleconaril, including certain patents obtained on the compound and the method for making the compound, were given to Sanofi France in an assignment from Sterling Winthrop, Inc. in 1994. In 1999, Sanofi France became Sanofi–Synthelabo, S.A. (hereafter SSBO France), and Sanofi Winthrop became Sanofi–Synthelabo, Inc. (hereafter SSBO U.S.). SSBO France has an exclusive license agreement with ViroPharma, Inc. to develop, market and sell various products, including pleconaril. Neither SSBO U.S. nor STWB, Inc. has any ownership interest in the intellectual property related to Sterling Winthrop's pipeline products, including pleconaril. SSBO France owns a number of U.S. patents, including the pleconaril patents, and maintains a website which is accessible in Indiana.

### III. Analysis

A federal district court exercising diversity jurisdiction has personal jurisdiction over a non-resident defendant "only if a court of the state in which it sits would have such jurisdiction." *Andersen v. Sportmart, Inc.,* 57 F.Supp.2d. 651, 656 (N.D.Ind.1999), *citing NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 579 (7th Cir.1994). The Indiana long-arm jurisdiction statute is found in Indiana Trial Rule 4.4(A). In *Anthem Ins. Cos. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227 (Ind.2000), the Indiana Supreme Court explained that while courts have generally construed Trial Rule 4.4 as extending personal jurisdiction "to the limits permitted under the Due Process clause of the Fourteenth Amendment," the rule is, in fact, an enumerated act, and thus the appropriate analysis is to first determine "whether the conduct falls under the long-arm statute and then whether it comports with the Due Process Clause as interpreted by the United States Supreme Court and courts in this state."

730 N.E.2d at 1232. Trial Rule 4.4(A) provides in relevant part:

> Any person or organization that is a nonresident of this state ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent ... (1) doing any business in this state....

If a defendant's contacts fall within this category, then the first step of the analysis is satisfied, and the court must turn to the due process question. *Anthem Ins. Cos.*, 730 N.E.2d at 1232.

■ The Supreme Court has held that "minimum contacts" must exist between the forum state and a non-resident defendant to provide the personal jurisdiction required by due process. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts exist when a finding of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). A non-resident defendant's relationship with the forum state must show that it can reasonably anticipate being haled into court in the forum state. *World Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Specifically, the court must decide whether a non-resident defendant "purposefully avail[ed]" itself of the privilege of conducting activities within the forum state. *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

■ SSBO France asserts that it does not do business in the state of Indiana, nor does it meet any of the other criteria under the Indiana long-arm statute, and thus it does not come under the jurisdiction of a court sitting in Indiana. It further argues that even if this court were to find that SSBO France did confer jurisdiction under the long-arm statute, SSBO France does not have the constitutionally required minimum contacts with Indiana to meet due process. Purdue first responds that SSBO France is a successor-in-interest to Sterling Drug Co., and thus, because Sterling did business in Indiana, and in fact had systematic and continuous contacts with Indiana, especially in the formation and performance of the contract between Sterling and Purdue, SSBO France is bound by Sterling's conduct. While several cases make it clear that personal jurisdiction can be imputed on a corporate successor where the predecessor corporation had the appropriate contacts with the forum state, *see Select Creations, Inc. v. Paliafito America, Inc.*, 852 F.Supp. 740, 765–66 (E.D.Wis.1994); *Sculptchair v. Century Arts, Ltd.*, 94 F.3d 623, 630 (11th Cir. 1996); when the predecessor and successor are parties to the assignment of a contract, the assignee does not automatically assume the assignor's contacts with the forum. *Russellville Steel Co., Inc. v. Sears, Roebuck & Co.*, 2000 WL 91680, *3 (N.D.Ill.2000). It appears that SSBO France purchased, or was assigned, something less than all of Sterling Drug, Inc., and thus this court cannot attribute Sterling's contacts to SSBO France in this analysis.

Purdue then asserts that SSBO France has significant direct contacts with Indiana such that it is subject to personal jurisdiction in Indiana. Purdue notes first that SSBO France purchased the Purdue Sterling contracts which were to be performed in Indiana and provided for the application of Indiana law. Additionally, SSBO France contracted with Eli Lilly, a corporation domiciled in Indiana, for a joint venture project. Purdue asserts that SSBO France controls SSBO, U.S. to an extent that SSBO, U.S.'s contacts with Indiana should be attributed to SSBO France. Finally, Purdue asserts that SSBO France's websites create a contact

with Indiana that would support personal jurisdiction.

■ There are two types of personal jurisdiction—general and specific. General jurisdiction has been defined by the Indiana Supreme Court as "contacts with Indiana [which are] substantial, continuous, extensive, and systematic, which Indiana courts have interpreted to include, among other things, having offices in Indiana, being incorporated in Indiana, and having employees in Indiana." *Anthem*, 730 N.E.2d at 1235 (Ind.2000). The activities listed above by Purdue do not establish the substantial, continuous, extensive and systematic contacts needed to confer general jurisdiction over SSBO France. With reference to the websites, the sites are clearly passive in nature, and thus do not create jurisdiction. *See F. McConnell and Sons, Inc. v. Target Data Systems*, 84 F.Supp.2d 961, 971 (N.D.Ind. 1999).

Purdue argues that SSBO France is subject to personal jurisdiction under a stream of commerce theory. In *World–Wide Volkswagen*, the Supreme Court explained that "[t]he forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchase by consumers in the forum state." 444 U.S. at 297–98, 100 S.Ct. at 567. As Magistrate Judge Cosbey explained in his opinion in *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236 (N.D.Ind.1998), the Seventh Circuit has taken a broad view of the stream of commerce theory, holding that

> "a defendant distributor or manufacturer may reasonably anticipate being haled into court when it places goods into the stream of commerce with some knowledge or awareness that the system employed for distribution will result in the goods being destined for retail sale

in the forum state." *See Nelson v. Park Industries, Inc.*, 717 F.2d 1120, 1126 (7th Cir.1983), *cert. denied sub nom United Garment Mfg. Co., Ltd. v. Nelson*, 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984). The *Nelson* court reasoned that the 'relevant scope of the foreseeable market is generally broader with respect to . . . primary distributors of products [t]hat are at the start of the distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market' because 'such . . . distributors purposely conduct their activities to make their products available for purchase in as many forums as possible.' *The Curtis Management Group, Inc. v. Academy of Motion Picture Arts and Sciences*, 717 F.Supp. 1362, 1370 (S.D.Ind.1989) (quoting *Nelson*, 717 F.2d at 1125).

179 F.R.D. at 239. Magistrate Cosbey went on to explain that "[u]nder the broad Seventh Circuit test, the critical fact is whether the defendant knows that the distribution system employed to disperse its products for retail sale is designed to bring the defendant's products into the forum state." *Id.* at 239–240.

■ In this case, SSBO France does not manufacture or distribute any products in the United States. Rather, its subsidiary, SSBO U.S., and its licensee, ViroPharma, are responsible for manufacturing and marketing the products which stem from SSBO France's patents. In *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355 (Fed.Cir.1998), the Federal Circuit opined that in instances where a proposed defendant's product is intellectual property, the 'stream of commerce' theory is not applicable to that defendant because the licensee who manufactures the product is not the licensor's agent. 148 F.3d at 1362. Because SSBO France is not placing any products into the stream of U.S. commerce, this court does not find that theory to apply to SSBO France.

Thus, this court does not find that it has personal jurisdiction over the defendant, SSBO France.

The remaining parties, SSBO U.S. and STWB, Inc., have moved this court to dismiss them for misjoinder. Purdue has not challenged that motion on the merits, but rather has requested more time for discovery. This court granted Purdue additional time for discovery on the pending motion during the pretrial conference on February 22, 2002. As the court does not have personal jurisdiction over SSBO France, it sees no reason to continue to hold SSBO U.S. and STWB, Inc. when Purdue has not shown why they are appropriate parties.

The motion to dismiss filed by SSBO France, SSBO U.S. and STWB, Inc. to dismiss for lack of personal jurisdiction and misjoinder is now **GRANTED** and this cause is now **DISMISSED**. The clerk shall enter judgment accordingly. Each party to bear its own costs.

**IT IS SO ORDERED.**