**Ron BRENEMAN, Appellant–
Defendant,**

v.

**Clifford SLUSHER d/b/a Slusher
Hardwoods, Appellee–
Plaintiff.**

**No. 71A03–0110–CV–338.**

Court of Appeals of Indiana.

May 10, 2002.

William L. LaBre, J.D., The Law Office of William L. LaBre, J.D., Edwardsburg, MI, Attorney for Appellant.

Lynn M. Butcher, Don G. Blackmond, Jr., South Bend, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Ron Breneman (Appellant) appeals the denial of his motion to set aside the default judgment entered against him in an action filed by Clifford Slusher, d/b/a Slusher Hardwoods. Appellant presents the following consolidated, restated issues for review:

1. Did the trial court have personal jurisdiction over Ron Breneman?

2. Did the trial court abuse its discretion in refusing to set aside the default judgment entered against Breneman?

We affirm.

The facts are that on March 11, 2000, Slusher entered into a timber contract with Michiana Hardwoods, Inc. (the First Contract). Greg Breneman,[1] who owned Michiana with his wife, Romana Breneman, signed the contract on behalf of Michiana. Under that contract, for the sum of $110,000, Michiana sold Slusher the rights to all usable timber or cut logs on certain property owned by Steve Cooreman in St. Joseph County, Indiana. The contract identified the timber in question as "trees on Steve Cooreman cont[ract]." This language referred to a contract (the Second Contract) that was, in fact, executed two days later, on March 13, 2000, between Michiana and Cooreman, d/b/a Cooreman Real Estate. Under the provisions of the Second Contract, Michiana agreed to pay Cooreman $90,000 for the rights to timber

located on Cooreman's land in St. Joseph County. In essence, in the First Contract, Michiana assigned to Slusher the timber rights it would acquire two days later from Cooreman in the Second Contract. It appears that, with respect to the First Contract, Slusher initially paid $60,000 of the $110,000 amount owed to Michiana, in what was characterized as a down payment. When Michiana and Cooreman signed their agreement two days later, Michiana paid $60,000 of the $90,000 contract amount.

Sometime thereafter, Slusher sought to begin logging on Cooreman's land, but Cooreman refused to allow it.[2] On June 16, 2000, Greg Breneman delivered to Slusher a check for $100,000, which was apparently intended to compensate Slusher for damages suffered as a result of his inability to perform logging activities on Cooreman's land. The check was drawn on Greg and Romana Breneman's personal checking account and bore Greg's signature. The drawee bank dishonored the check due to insufficient funds.

It is at this point that Ron Breneman became involved, although the parties disagree about how his involvement was initiated and to what extent he became involved. Both questions are relevant to the issues before us. According to Appellant, he was contacted by Don Harper, a mutual friend of all of the principals involved. Harper asked Appellant to help resolve the matter between Greg Breneman and Slusher. According to Slusher, Appellant contacted him and asked to meet and discuss the problem. Regardless of how it came about, it is undisputed that Appellant and Slusher met at a truck stop in Roch-

---

1. Greg Breneman is Appellant's brother.

2. Although the record does not contain evidence explaining Cooreman's refusal to permit Slusher to begin logging, we agree with

Appellant's observation that it may be inferred that Michiana had not paid Cooreman the $30,000 balance owed on the Second Contract.

ester, Indiana in January or February of 2001 in order to discuss the situation. Each party remembers the events of that meeting differently.

According to Slusher, Appellant gave his personal guarantee that if Slusher refrained from filing a lawsuit against Greg Breneman and Michiana within the week, Appellant would make sure that Slusher was paid in full within two weeks. Slusher asked whether Appellant was giving his personal guarantee and Appellant responded, "I personally guarantee that you will get paid." *Appellant's Appendix* at 35. Appellant, on the other hand, denied Slusher's allegation that he gave his personal guarantee. In fact, he claims to have told Slusher that he "would not sell any of his property, borrow any money, or utilize any of his assets to pay his (Greg Breneman's) debt." *Id.* at 107.

According to Slusher, he relied upon Appellant's alleged assurance and did not file suit against Greg Breneman or Michiana. At the time that Appellant and Slusher met in the Rochester Truck Stop, Greg Breneman apparently owned certain assets that could have been used to satisfy some or all of the debt to Slusher. Those assets were liquidated at some point between the time Slusher agreed to forestall the filing of a lawsuit and the time that he filed suit about eight weeks later.

On April 4, 2001, Slusher filed suit against Michiana, Cooreman Real Estate Group, Inc., Steve Cooreman, Greg Breneman, Romana Breneman, and Ron Breneman. The only allegations in the complaint that are relevant to the instant appeal are those against Appellant, Ron Breneman. In Count IV of the complaint, Slusher alleged that Appellant personally guaranteed the debt Greg Breneman incurred on the First Contract. Slusher further alleged that he relied on that guarantee in delaying the filing of a law-

suit, and that such was done to his detriment because Greg Breneman was able to liquidate and dispose of his assets before Slusher could file suit to reach them in satisfaction of the debt. Thereafter, Slusher sought to serve all of the named defendants with a copy of the complaint and summons. Because it is critical to the issues before us, we reproduce below relevant portions of an affidavit submitted by Jim Klemczewski, who was hired by Slusher to serve Appellant with a copy of the complaint.

3. I was contacted by the attorney for the Plaintiff, Clifford Slusher, d/b/a Slusher Hardwoods, who retained my services for the purpose of serving process on Steve Cooreman, Greg Breneman, Romana Breneman, and Ron Breneman, in the above captioned matter.

4. I located Ron Breneman's last known residential address in Buchanan, Michigan, at 236 E. Wagner, Buchanan, Michigan 49107.

5. I attempted to personally serve Ron Breneman advising him that I was attempting to contact him.

6. On April 7, 2001, I contacted Greg Breneman by telephone and advised him who I was and that I was attempting to serve process on him, Romana, and Ron. He advised me that he was traveling to South Haven, Michigan, and would not be back until Monday, April 9, 2001. He agreed to meet me at his business on the 9th. He agreed to bring Ron Breneman with him so that they could be served at the same time.

7. On April 9, 2001, I telephoned Greg Breneman at his home telephone number, (616) 756–3637, and left a message with his answering service.

8. On April 11, 14, and 16, I made additional telephone calls to Greg Breneman at his home telephone num-

ber, however he did not answer my calls. On these same dates I telephoned Ron Breneman at his home telephone number, (616) 695–3847, and left messages for him concerning my need to get in contact with him. He did not return my calls.

9. On April 16, 2001, I personally served the Complaint and summons on Greg Breneman. He accepted service for his wife, Romana Breneman.

10. On April 16, 2001, I affixed one copy of the Complaint and one copy of the summons to the front door of Ron Breneman's dwelling house located at 236 E. Wagner, Buchanan, Michigan 49107. On April 16, 2001, I also mailed one copy of the Complaint and one copy of the summons to Ron Breneman at the 236 E. Wagner address by certified mail, return receipt requested. The attendant at the United States Post Office advised me that in the past Ron Breneman had not accepted certified mailings and would not accept the certified mailing from me. The return receipt card was never returned to me.

11. I attempted to serve Ron Breneman at 236 E. Wagner, Buchanan, Michigan 49107, but he refused to cooperate by not returning my phone calls, not responding to the notes that I left for him, and not showing up for the scheduled meeting, thereby successfully evading personal service.

12. During my efforts to personally serve Ron Breneman I learned that other people were looking for him, that he was evading those other people, and that he did not cooperate with people who were looking for him.

13. I performed a diligent search. That search revealed no other addresses for Ron Breneman and further revealed that the telephone number for his business, R & D Forest Products, is the same as his home telephone number.

14. I exhausted all reasonable means to personally serve Ron Breneman.

*Appellant's Appendix* at 119–21. In view of the difficulties encountered in getting personal service on the Appellant, on June 14, 2001, Slusher filed a Praecipe for Summons by Publication, which stated:

YOU ARE HEREBY NOTIFIED that you are a party to the above captioned cause of action where in a Complaint was filed on April 4, 2001 in this Court. Unless you respond within thirty (30) days after the last notice of this action is published, a judgment by default may be entered against you for the relief demanded in this complaint.

*Id.* at 80. As a result of the published notice, Greg Breneman contacted Slusher's attorney, Donald G. Blackmond, Jr.,[3] and the two arranged a day and time to meet. On the morning of the day they were supposed to meet, Greg Breneman called to inform Blackmond that he would have to reschedule the meeting. They agreed to meet the next week. Greg did not show up for the rescheduled meeting, nor did he call to explain his absence. Blackmond sent a letter to Greg stating that Greg had failed to make a good-faith effort to resolve the situation and stressing the need to do so.

On July 17, 2001, Blackmond sent a letter to Greg and Romana Breneman, in care of Greg's mother. That letter contained the following: "Your brother Ron will need to contact me regarding the lawsuit pending against him. He will need to respond to the complaint or be defaulted."

---

**3.** At the time this appeal was filed, Slusher was also represented by Lynn M. Butcher. On March 8, 2002, Butcher filed with this court a Motion For Withdrawal of Appearance. That motion is hearby granted.

*Id.* at 24. Soon thereafter, Appellant called Blackmond and arranged to meet with him at Blackmond's office. Blackmond described that meeting, which occurred on July 31, 2001, and subsequent events, as follows:

[Appellant] came to my office and met with me for a period of time. During that meeting we discussed the general nature of the allegations involving the contract with Greg. Ron discussed with me how this thing was going to be—how he was trying to handle his brother's assets until such time as his brother could get out of jail. Because meanwhile he was incarcerated for an unrelated matter, and that's the way it was left. He told me he would be contacting me every day after that to let me know the status of these pieces of real estate and other assets being liquidated.... I never heard from him again, so I filed the motion for default.

*Id.* at 19.

Slusher first filed a motion for default judgment against Greg and Romana Breneman and Michiana. That motion was granted on May 9, 2001. On August 8, 2001, Slusher filed a motion for default judgment against Appellant. In an affidavit filed later in conjunction with the motion for default judgment against Appellant, Blackmond specifically stated, "Ron Breneman advised [Blackmond] that he was aware of the lawsuit pending against him and the summons published in the Niles Daily Star." *Id.* at 93. The motion for default judgment against Appellant was granted the same day it was filed.

On August 14, 2001, Appellant filed a motion to set aside the default judgment. The motion was based upon Appellant's claims that 1) he did not have actual notice of the lawsuit prior to the entry of default and therefore the attempted service by publication was defective, 2) the trial court did not have personal jurisdiction over Appellant, and 3) he had a meritorious defense to the allegations against him. The trial court denied the motion.

1.

Appellant contends the trial court did not have personal jurisdiction over him. Trial Rule 4.4(A) of the Indiana Rules of Trial Procedure functions as Indiana's "long-arm statute." T.R. 4.4(A) is an "enumerated act" statute, which directs the court to assert jurisdiction over defendants who, in the state of Indiana, commit any act listed in the statute. *Anthem Ins. Co., Inc. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227 (Ind.2000). Our supreme court held in *Anthem Ins. Co., Inc. v. Tenet Healthcare Corp.* that the correct approach for determining whether personal jurisdiction exists under T.R. 4.4(A) is to "engage in a two-step analysis, first determining whether the conduct falls under the long-arm statute and then whether it comports with the Due Process Clause as interpreted by the United States Supreme Court and courts in this state." *Id.,* 730 N.E.2d at 1232.

T.R. 4.4(A) provides:

Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state;

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent

course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

(5) owning, using, or possessing any real property or an interest in real property within this state;

(6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made;

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state; or

(8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state.

■ Appellant acknowledged that he called Slusher and arranged to meet with him in Rochester, Indiana. During that meeting, the two discussed Slusher's contract with Michiana, the company owned by Appellant's brother. Pursuant to that contract, Slusher purchased the right to perform logging operations on certain land located in Indiana. Assuming for the sake of argument that Appellant's claims are true concerning the nature and substance of his input in that meeting, Appellant sought Slusher's forbearance on pursuing remedies against Greg Breneman for breach of the contract. Appellant also advised Slusher about the status of Greg

Breneman's finances and assured Slusher that he would do what he could to see that Greg paid Slusher the funds that were owed as a result of the breach. In summary, Appellant actively intervened on his brother's behalf in a situation involving the breach of a contract between Greg Breneman and an Indiana resident, and involving logging activity on Indiana land. We conclude that this constituted "doing any business" within the meaning of T.R. 4.4(A)(1). Having determined that Appellant's contacts with Indiana satisfy the requirements of T.R. 4.4(A), we must now examine whether asserting jurisdiction in this particular case violates the Due Process Clause of the Fourteenth Amendment. *Anthem Ins. Co., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227.

■ The modern approach to the issue of personal jurisdiction was established in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The United States Supreme Court established in the former that a person must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The Court clarified that the existence of personal jurisdiction is not a mechanical test, but instead depends upon the nature and quality of the contacts with the forum. The Supreme Court added in *Hanson* that contacts are sufficient to establish personal jurisdiction only where there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*,

357 U.S. at 253, 78 S.Ct. 1228. We stress here that the contacts that are examined must be the purposeful acts of the *defendant*, not the acts of the plaintiff or any third parties.

■ Our courts have since interpreted *International Shoe* as creating a two-part test to determine whether personal jurisdiction exists under the Due Process Clause. First, we examine the contacts between the defendant and the forum state to determine whether they are sufficient to establish that the defendant could "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). If the contacts are found to be sufficient, then we must evaluate whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" by weighing a variety of interests. *Id.* at 476, 105 S.Ct. 2174. Either of two types of contacts may be sufficient to establish jurisdiction. Those include (1) defendant's contacts with the forum state that are unrelated to the basis of the lawsuit, and (2) defendant's contacts that are related to the subject matter of the lawsuit. *Anthem Ins. Co., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227. Those concepts have come to be known as general and specific personal jurisdiction, respectively. *Id.*

■ Specific personal jurisdiction "stems from the defendant's having certain minimum contacts with the forum state so that the court may hear a case whose issues arise from those minimum contacts." Black's Law Dictionary 857 (7th ed.1999). This type of jurisdiction over a defendant may be established upon a showing that the defendant purposefully established contact with the forum state and that the basis of the lawsuit arose out of those contacts. *See Burger King*, 471 U.S. 462, 105 S.Ct. 2174. A single contact

with a forum state may be enough to establish specific personal jurisdiction. *Anthem Ins. Co., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227.

■ When evaluating whether specific personal jurisdiction exists, we examine the quality and nature of the activities that took place within the state and determine whether they are related to the basis of the lawsuit and the result of deliberate conduct on the defendant's part. The following are factors to be considered in this analysis:

> (1) [W]hether the claim arises from the defendant's forum contacts, (2) the overall contacts of the defendant or its agent with the forum state, (3) the foreseeability of being haled into court in that state, (4) who initiated the contacts, and (5) whether the defendant expected or encouraged contacts with the state.

*Id.* at 1236. Finally, the determination of whether there were sufficient contacts to establish specific personal jurisdiction is fact-sensitive and will be determined on a case-by-case basis. *Anthem Ins. Co., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227. We apply the de novo standard when reviewing whether personal jurisdiction exists. *Id.*

■ As set out previously, Appellant called Slusher, an Indiana resident, and arranged to meet with him in Indiana. The stated purpose of the meeting was to discuss Greg Breneman's liability to Slusher pursuant to a contract between Slusher and Michiana under which Slusher's company would perform logging activities on land located in Indiana. Appellant asked Slusher to delay further legal action against Michiana for breaching the contract, and told Slusher that he, Appellant, would do what he could to help. These contacts with Indiana were initiated by Appellant, obviously were deliberate, and

were related to the basis of the claim by Slusher against Appellant. Therefore, there were sufficient minimum contacts to establish the Indiana court's specific personal jurisdiction over Appellant. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.

▊▊▊ Having found that minimum contacts exist to establish specific personal jurisdiction over Appellant, we turn now to the final step of the analysis. That is, we must decide whether asserting personal jurisdiction over Appellant "offend[s] traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. 154. In conducting this analysis, we consider the following factors:

> "[T]he burden on the defendant; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenience and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174 (citations and internal quotations omitted). In making this determination, this court has also examined the relationship among the defendant, the forum, and the litigation, "the preservation of constitutional principles of interstate federalism, and the existence of an alternative forum to hear the dispute." *Anthem Ins. Co., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d at 1237 (quoting *Griese–Traylor Corp. v. Lemmons*, 424 N.E.2d 173, 180 (Ind.Ct. App.1981)). The burden is on Appellant to prove that asserting jurisdiction over him is unfair and unreasonable. *Anthem Ins. Co., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227.

▊▊▊ In balancing the fairness factors, we conclude that the exercise of specific personal jurisdiction is reasonable in this case. Although there may be a burden on Appellant in defending this action in Indiana, such is outweighed by Indiana's interest in protecting the enforceability of contracts made by its citizens, Slusher's interest in obtaining a remedy for the alleged breach of contract by Greg Breneman and Michiana, and the judicial system's interest in avoiding multiple litigation of the same facts. Therefore, the exercise of specific personal jurisdiction over Appellant complies with T.R. 4.4(A) and the Due Process Clause.

2.

Ron Breneman contends that the trial court abused its discretion in refusing to set aside the default judgment against him, arguing that the court should have done so for either of two reasons. First, he claims that he did not have actual notice of the lawsuit prior to the entry of default and, therefore, pursuant to T.R. 60(B)(4), the attempted service by publication was defective. Second, he contends that the default judgment was invalid in the first instance because the trial court did not conduct a hearing on the motion for default judgment. We will address these arguments in turn.

▊▊▊ We review the ruling on a T.R. 60(B) motion for relief from judgment under an abuse of discretion standard. An abuse of discretion occurs when the judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Integrated Home Tech., Inc. v. Draper*, 724 N.E.2d 641 (Ind. Ct.App.2000). In conducting our review, we will not reweigh the evidence or substitute our judgment for that of the trial court. *Professional Laminate & Millwork, Inc. v. B & R Enter.*, 651 N.E.2d 1153 (Ind.Ct.App.1995).

Appellant bears the burden of proving sufficient grounds to justify setting aside the default judgment entered against him. *Bonaventura v. Leach,* 670 N.E.2d 123 (Ind.Ct.App.1996), *trans. denied.* The permissible grounds for relief are delineated in T.R. 60(B). *Jostens Learning Corp. v. Education Sys. Corp. of Indiana,* 651 N.E.2d 1186 (Ind.Ct.App. 1995), *trans. denied.* In this specific case, Appellant sought relief under T.R. 60(B)(4), which states:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

> \* \* \* \* \*

> (4) entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order or proceedings;

In order to obtain relief under this section, Appellant was required to show (a) default was entered against him, (b) he was served only by publication, and (c) he was without actual knowledge of the action and judgment, order, or proceedings. *Wilson v. K.W.,* 497 N.E.2d 244 (Ind.Ct.App.1986). It is uncontroverted that default judgment was entered against Appellant and that he was served only by publication. Therefore, the only disputed element is whether Appellant had actual knowledge of the lawsuit against him. We employ an abuse-of-discretion standard when reviewing a trial court's determination regarding whether a defendant was without actual knowledge of the action. *See Wilson v. K.W.,* 497 N.E.2d 244.

It may clearly be inferred that the trial court determined that Appellant had actual knowledge of the lawsuit filed against him by Slusher. We have hashed and rehashed the evidence relevant to that question and need not do so again. For purposes of appellate review, it suffices to observe that there was evidence that Appellant actively avoided service of process and that he knew of the lawsuit that had been filed against him. Although there was evidence to support Appellant's contrary assertions, we are bound by our standard of review to defer to the trial court's assessment of that question. *See id.* Thus, because Appellant failed to prove one of the elements necessary to prevail on his motion, the trial court did not abuse its discretion in denying his motion to set aside the default judgment.

We note that Appellant argues that the default judgment must be set aside because the notice by publication in this case did not comply with Trial Rule 4.13(B), which provides that a summons served by publication must contain "[a] brief statement of the nature of the suit, which need not contain the details and particulars of the claim" and a "description of any property, relationship, or other res involved in the action, and a statement that the person being sued claims some interest therein[.]" Even assuming that the published summons was deficient in this regard, Appellant is not entitled to relief on that basis.

Trial Rule 4.15(F) states, "No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." The summons by publication that ran in the Niles [Michigan] Daily Star did in fact inform the reader that Slusher had instituted an action against Ron Breneman in the St. Joseph Circuit Court, and that Ron Breneman had thirty days from the day the last

notice of the action was published in which to respond. Therefore, because the notice by publication contained the requisite elements, as set out in T.R. 4.15(F), that provision prevented the trial court from setting aside the default judgment based upon any other technical deficiencies inherent in the summons.

Finally, Appellant contends that the default judgment must be set aside because the trial court did not conduct a hearing on the motion for default prior to granting the motion. We note that Appellant did not present this issue to the trial court at the hearing to set aside the default judgment, but instead presents it for the first time upon appeal. An appellant who presents an issue for the first time on appeal under these circumstances waives the issue for purposes of appellate review. *See Scott v. Crussen,* 741 N.E.2d 743 (Ind. Ct.App.2000).

Judgment affirmed.

VAIDIK, J., and BARNES, J., concur.