Allen J. BROCKMAN, Appellant–Plaintiff,

v.

John N. KRAVIC, Ph.D., Appellee–Defendant.

No. 22A04–0204–CV–169.

Court of Appeals of Indiana.

Dec. 20, 2002.

———

Donald E. Smith, Louisville, KY, Attorney for Appellant.

Laurie Goetz Kemp, Leanne M. Garbers, Tera M. Rehmel, Elizabeth Ullmer Mendel, Woodward, Hobson & Fulton, L.L.P., Louisville, KY, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Allen J. Brockman appeals the trial court's dismissal of his suit against John N. Kravic, Ph.D. for lack of personal jurisdiction, raising the following issue: does a psychologist who is not licensed by—and does not practice in—the State of Indiana submit to the personal jurisdiction of Indiana's courts by mailing a written opinion into Indiana for claims arising from that opinion.

We reverse.

## FACTS AND PROCEDURAL HISTORY

In July 1999, Kravic, a psychologist licensed in Kentucky, began counseling Brockman's son, A.B., at the request of A.B.'s mother, Tiffany Guerrero, in his Kentucky office. A.B. was the subject of a custody dispute between Brockman and Guerrero. Brockman, Guerrero, and A.B. were at all times residents of Indiana. In August 1999, Guerrero filed a petition for a change in custody of A.B. in Floyd Superior court in Indiana and requested the court to order a psychological examination of A.B. and appoint Kravic to perform the evaluation.

In September 1999, Kravic wrote a letter to Guerrero's attorney in which he opined that Brockman's visitation with his son should be temporarily halted. The trial court suspended Brockman's visitation with A.B. until it could interview A.B. In October 1999, the trial court ordered Brockman to attend a counseling session with Kravic, which he did.

In November 1999, Kravic wrote two more letters in which he recommended that Guerrero have full custody and that Brockman's visitation be "handled therapeutically." *Appellant's Appendix* at 75.

In October 2001, Brockman filed suit in the Floyd Superior Court against Kravic for slander, libel, defamation, interference with a parental relationship, and intentional infliction of emotional distress. Kravic filed a motion to dismiss alleging that the Floyd Superior Court lacked personal jurisdiction over him. The trial court agreed and dismissed Brockman's suit. Brockman now appeals.

## DISCUSSION AND DECISION

 Brockman argues that the trial court's conclusion that it lacked jurisdiction over Kravic was erroneous and therefore his suit should not have been dismissed on this basis. Personal jurisdiction is the court's power to bring a person into its adjudicative process and render a valid judgment over a person. *Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1231 (Ind.2000); *Am. Econ. Ins. Co. v. Felts*, 759 N.E.2d 649, 653 (Ind.Ct.App.2001). The existence of personal jurisdiction over a defendant is a constitutional requirement to rendering a valid judgment, mandated by the Due Process Clause of the Fourteenth Amendment. *Anthem*, 730 N.E.2d at 1237.

 Because jurisdiction is presumed in Indiana and need not be alleged in the complaint, the plaintiff's burden to come

forward with evidence that would establish jurisdiction does not arise until jurisdiction is challenged by the defendant. *Mart v. Hess,* 703 N.E.2d 190, 192–93 (Ind.Ct.App. 1998). A challenge to personal jurisdiction may be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss. *Anthem,* 730 N.E.2d at 1231. A party challenging the court's personal jurisdiction must prove its challenge by a preponderance of the evidence unless lack of jurisdiction is apparent on the face of the complaint. *Id.; Felts,* 759 N.E.2d at 654; *Mart,* 703 N.E.2d at 192; *Freemond v. Somma,* 611 N.E.2d 684, 687 (Ind.Ct.App.1993).

 It is within the trial court's sound discretion to decide the jurisdictional facts. *Freemond,* 611 N.E.2d at 687. A trial court's findings of jurisdictional facts are generally reviewed for clear error. *Anthem,* 730 N.E.2d at 1238. Once the court has decided those facts, however, whether personal jurisdiction exists is a question of law. *Tom–Wat, Inc. v. Fink,* 741 N.E.2d 343, 346 (Ind.2001); *Freemond,* 611 N.E.2d at 687. We review a trial court's determination of personal jurisdiction de novo. *Anthem,* 730 N.E.2d at 1238; *Felts,* 759 N.E.2d at 654.

 In determining whether it has personal jurisdiction, a trial court should engage in a two-step analysis. *Anthem,* 730 N.E.2d at 1232; *Felts,* 759 N.E.2d at 654; *Mart,* 703 N.E.2d at 192–93. First, the court must resolve whether the conduct falls under the long-arm statute. *Anthem,* 730 N.E.2d at 1232; *Felts,* 759 N.E.2d at 654; *Mart,* 703 N.E.2d at 192–93. Second, if the conduct falls under the long-arm statute, the court must determine whether the exercise of personal jurisdiction comports with the Due Process Clause as interpreted by the United States Supreme Court and courts of this state. *Anthem,*

730 N.E.2d at 1232; *Felts,* 759 N.E.2d at 654; *Mart,* 703 N.E.2d at 192–93.

 Ind. Trial Rule 4.4(A) is Indiana's equivalent of a "long-arm statute" and is the starting point for any analysis of personal jurisdiction. *Anthem,* 730 N.E.2d at 1231. T.R. 4.4(A) is intended to extend personal jurisdiction to the constitutional limits and provides that a nonresident may be subject to the jurisdiction of the Indiana courts if certain conditions are met. *Mart,* 703 N.E.2d at 192–93. If a person's contacts with Indiana fall into any of the eight categories described, T.R. 4.4(A) is satisfied. *Anthem,* 730 N.E.2d at 1233.

T.R. 4.4(A)(2) states:

"Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:

. . .

(2) causing personal injury or property damage by an act or omission done within this state[.]"

 Here, Brockman alleges an injury from the letters Kravic wrote to Guerrero's attorney in the proceedings to determine the custody of A.B. He contends that the relationship between him and his son, both Indiana residents, has been damaged by Kravic's actions. The complaint alleges that Kravic's letters were published in Indiana and caused an injury in Indiana. Therefore, subsection (2) applies.

 After finding a basis for jurisdiction under the long-arm statute, courts must examine whether asserting jurisdiction violates the Due Process Clause of the Fourteenth Amendment. *Anthem,* 730 N.E.2d at 1233. The modern approach to

personal jurisdiction was established in *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *Id.; Breneman v. Slusher,* 768 N.E.2d 451, 459 (Ind. Ct.App.2002), *trans. pending.* In *International Shoe,* the United States Supreme Court explained that a person must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Anthem,* 730 N.E.2d at 1233; *Breneman,* 768 N.E.2d at 459. The existence of personal jurisdiction depends on the nature and quality of the contacts with the forum, not a mechanical test. *Anthem,* 730 N.E.2d at 1233; *Breneman,* 768 N.E.2d at 459. In *Hanson,* the Supreme Court added the requirement that the defendant's contacts consist of some action by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Anthem,* 730 N.E.2d at 1233–34; *Breneman,* 768 N.E.2d at 459–60. Only the purposeful acts of the defendant, not the acts of the plaintiff or any third parties, satisfy this requirement. *Anthem,* 730 N.E.2d at 1234; *Breneman,* 768 N.E.2d at 460.

 Thus, there is a two-part test to determine whether personal jurisdiction exists under the Due Process Clause. *Anthem,* 730 N.E.2d at 1234; *Breneman,* 768 N.E.2d at 460. First, courts must look at the contacts between the defendant and the forum state to determine if they are sufficient to establish that the defendant could reasonably anticipate being haled into court there. *Anthem,* 730 N.E.2d at 1234; *Breneman,* 768 N.E.2d at 460. If the contacts are sufficient, then the court must evaluate whether the exercise of personal jurisdiction offends traditional no-

tions of fair play and substantial justice by weighing a variety of interests. *Anthem,* 730 N.E.2d at 1234; *Breneman,* 768 N.E.2d at 460.

 Contacts are any acts physically performed in the forum state or acts performed outside the forum state that have an effect within the forum. *Anthem,* 730 N.E.2d at 1235. There are two types of contacts that may be sufficient to establish jurisdiction: (1) the defendant's contacts with the forum state that are unrelated to the basis of the lawsuit, and (2) the defendant's contacts that are related to the subject matter of the lawsuit. *Id.* at 1234; *Breneman,* 768 N.E.2d at 460. Those concepts have come to be known as general and specific personal jurisdiction, respectively. *Breneman,* 768 N.E.2d at 460.

 General personal jurisdiction refers to the ability to be sued for any claim in a state. *Anthem,* 730 N.E.2d at 1234. In order to establish general personal jurisdiction, the court must find continuous and systematic contacts with the forum state such that the defendant could reasonably foresee being haled into court in that state for any matter. *Id.* General personal jurisdiction may exist if the contacts are substantial, continuous, and systematic. *Id.* The contacts required for general personal jurisdiction are greater than those needed to establish specific personal jurisdiction. *Id.*

 Specific personal jurisdiction is jurisdiction that stems from the defendant's having certain minimum contacts with the forum state so that the court may hear a case whose issues arise from those minimum contacts. *Id.* at 1235; *Breneman,* 768 N.E.2d at 460. Under this theory, the defendant's isolated contacts with a state that are not enough to establish general personal jurisdiction may be sufficient to allow jurisdiction over any incidents re-

lated to those contacts. *Anthem*, 730 N.E.2d at 1235; *Breneman*, 768 N.E.2d at 460. A single contact with a forum state may be enough to establish specific personal jurisdiction if it creates a substantial connection with the forum state and the suit is based on that connection. *Anthem*, 730 N.E.2d at 1235; *Breneman*, 768 N.E.2d at 460. However, the act must be purposeful, not random or attenuated or the unilateral activity of another party or a third person. *Anthem*, 730 N.E.2d at 1235.

 The analysis of the contacts for specific personal jurisdiction is fact-specific and determined on a case-by-case basis. *Id.* at 1235; *Breneman*, 768 N.E.2d at 460. Factors to consider when evaluating the defendant's contacts with the forum state are: (1) whether the claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agent with the forum state; (3) the foreseeability of being haled into court in that state; (4) who initiated the contacts; and (5) whether the defendant expected or encouraged contacts with the state. *Anthem*, 730 N.E.2d at 1236; *Breneman*, 768 N.E.2d at 460.

 Once contacts sufficient to establish personal jurisdiction, be it general or specific, are found, the court must further decide whether asserting personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *Anthem*, 730 N.E.2d at 1236; *Breneman*, 768 N.E.2d at 461. In doing so, we balance a number of factors to determine whether the assertion of jurisdiction is reasonable and fair. *Anthem*, 730 N.E.2d at 1236; *Breneman*, 768 N.E.2d at 461. They are: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate

judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Anthem*, 730 N.E.2d at 1236; *Breneman*, 768 N.E.2d at 461. The fairness inquiry is separate from the contacts question and may be used to defeat jurisdiction even if the defendant has sufficient contacts with the forum state. *Anthem*, 730 N.E.2d at 1236. After the plaintiff establishes that there are minimum contacts, the defendant then carries the burden of proving that asserting jurisdiction is unfair and unreasonable. *Id.* at 1237; *Breneman*, 768 N.E.2d at 461. To determine if the exercise of personal jurisdiction is reasonable in a particular case, we may examine the relationship among the defendant, the forum, and the litigation, the principles of interstate federalism, and the existence of an alternative forum to hear the dispute. *Anthem*, 730 N.E.2d at 1237; *Breneman*, 768 N.E.2d at 461.

We applied these principles in *Mart*, 703 N.E.2d at 192–93. In that case, the plaintiffs filed a complaint for defamation which alleged that the defendant, a resident of Hawaii, sent defamatory letters and facsimiles to one of the plaintiff's places of employment. We noted that in a defamation action, the place of the tort is generally considered the place of publication, that is, where the defamatory material is communicated to a third party. Thus, we concluded that T.R. 4.4(A)(2) applied. Because the plaintiff was described in the complaint as an Indiana resident, this court found that the complaint did not indicate a lack of jurisdiction over the defendant. *Id.*

We further held that the exercise of jurisdiction was consistent with due process. We observed that the defendant's contact with Indiana consisted of the transmission of defamatory communica-

tions to Indiana. We concluded that these acts done in Indiana subjected her to the jurisdiction of Indiana courts. *Id.* We observed that while such contacts would not ordinarily subject a nonresident to jurisdiction in Indiana, an ordinarily insignificant contact with a state becomes constitutionally significant when it gives rise to the claim involved in the lawsuit. We noted that the defendant's contacts gave rise to the claim involved, in that her actions in sending defamatory materials concerning the plaintiffs to third parties in Indiana formed the basis for the plaintiff's defamation action. Accordingly, we concluded that the defendant's contacts with Indiana were sufficient to confer jurisdiction on Indiana courts. *Id. See also Woodmar Coin Ctr., Inc. v. Owen,* 447 N.E.2d 618, 621 (Ind.Ct.App.1983) (sufficient contacts to exercise personal jurisdiction over defendant because defendant purposely availed himself of benefits and responsibilities of doing business in Indiana by forming a contract with an Indiana resident where defendant made two phone calls to plaintiff in Indiana to initiate relationship, parties engaged in substantial negotiations and entered into a contract). *But see Harold Howard Farms v. Hoffman,* 585 N.E.2d 18, 20–22 (Ind.Ct.App.1992) (insufficient minimum contacts where defendant advertised breeding services in publications that plaintiff received at home in Indiana, received telephone calls from plaintiff in Indiana, and made unrelated business trips to Indiana); *Baseball Card World, Inc. v. Pannette,* 583 N.E.2d 753, 755–56 (Ind.Ct.App.1991), *trans. denied* (1992) (insufficient minimum contacts where defendant knew he was doing business with Indiana company, telephoned Indiana company once or twice per week for five months, and mailed checks to Indiana, but parties began relationship outside of Indiana and defendant never came to Indiana, contract which formed

basis of suit was not executed in Indiana, no contract negotiations occurred in Indiana, and defendant did not maintain offices in Indiana); *Dura–Line Corp. v. Sloan,* 487 N.E.2d 469, 470–71 (Ind.Ct. App.1986) (insufficient minimum contacts to establish personal jurisdiction over defendant where defendant was Kentucky corporation with principal office in Kentucky, which had unrelated transactions in Indiana in past, and had no office in Indiana, and claim was based on breach of contract for contract that arose in Minnesota, although written and telephonic communications did occur with plaintiff in Indiana).

 In this case, as in *Mart,* Kravic published letters in Indiana that Brockman contends are defamatory. Although Kravic does not have the type of continuous and systematic contacts required to confer general jurisdiction, these acts are sufficient contact with Indiana to confer specific jurisdiction. Kravic was contacted by Guerrero, an Indiana resident, with regard to providing counseling to her son, another Indiana resident. Although he performed this counseling at his Kentucky office, he rendered a report of that counseling to an Indiana resident in Indiana. Thus, the publication of the allegedly defamatory material occurred in Indiana. After he sent this letter, the Indiana court presiding over Guerrero's petition to modify custody of A.B. ordered Brockman to attend a counseling session with Kravic, which Kravic voluntarily conducted. Subsequently, Kravic wrote and mailed to Indiana two more letters in which he volunteered his opinion about the appropriate arrangement for custody of A.B.

While it is true that Kravic did not initiate the relationship between Guerrero and Kravic, he did have a purposeful contact with Indiana when he mailed the letters there and voluntarily inserted himself

into legal proceedings being conducted in Indiana by an Indiana court. Moreover, Kravic was aware of the context into which he was offering his opinion: he knew that the Indiana parties were actively engaging in a dispute in an Indiana court over custody of A.B. Certainly, after offering his opinion under such circumstances, Kravic should have expected that it might be possible that he would be haled into Indiana court. We conclude that Kravic had sufficient minimum contacts to confer the Floyd Superior court with specific personal jurisdiction over him.

Kravic cites *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 827–28 (Ind.Ct.App.1999) as support for his argument that the Indiana court lacks personal jurisdiction over him because he has insufficient contacts with this state. In that case, the parties communicated through interstate telephone calls and letters and the defendant agreed to show equipment located in Ohio to one of the plaintiff's clients. We held that there were insufficient contacts to exercise jurisdiction over the nonresident defendant who had never been in Indiana, but had engaged in numerous phone calls, letters, and facsimile transmissions with the forum state regarding property located in Ohio. Therefore, we concluded that the trial court did not err in finding that the defendant's contacts with Indiana were insufficient to confer personal jurisdiction over it. *Id.* at 830.

However, in *Hotmix*, the subject of the parties' agreement was located outside of Indiana. Furthermore, the parties were engaged in an arm's-length business transaction. In this case, by contrast, Kravic became embroiled in an essentially Indiana controversy. A.B. and his parents were all residents of Indiana, and Kravic was aware of the circumstances when he wrote the letters. Moreover, the nature of this case, which involves the court system and an Indiana family, demonstrate a more intimate connection between Indiana and the transaction than that present in *Hotmix*. Further, while Hotmix involved a breach of contract action, the instant case sounds in tort. In short, we decline to find Hotmix dispositive here.

██ We must next determine if exercising jurisdiction would be fair and reasonable in this case. First, the burden on Kravic is relatively small because a minimal amount of travel is required to appear and defend the Floyd County, Indiana suit. Further, Indiana has a significant interest in protecting its citizens from defamatory or libelous material that is published in Indiana. Brockman's interest in obtaining convenient and effective relief is strong here, particularly because his involvement with Kravic was completely involuntary. He did not solicit Kravic's opinion, nor did he request that the trial court involve Kravic. Finally, there is no possibility for conflict between Kentucky and Indiana. Kentucky's psychological licensing board has already taken action with regard to Kravic, and there is no possibility that a Kentucky court could rule on the case, because Brockman's suit in Kentucky court has already been dismissed with prejudice based on the expiration of the statute of limitations. We find that exercising jurisdiction over Kravic would not offend notions of fairness and reasonableness. We therefore conclude that the trial court's determination that it lacked specific personal jurisdiction over Kravic was erroneous, and we reverse its order granting Kravic's motion to dismiss.

Reversed.[1]

RILEY, J., concurs.

1. Brockman's motion for permission to file an amended appendix is granted. His motion to

BROOK, C.J., concurs in result with separate opinion.

BROOK, Chief Judge, concurring in result.

I concur in the majority's reversal of the dismissal of Brockman's suit, but I respectfully take issue with the majority's analysis in two significant respects.

First, although I agree with the majority that a trial court should (indeed, must) engage in a two-step analysis to determine whether it has personal jurisdiction, I am puzzled by the majority's consideration of Brockman's interference claim in its Trial Rule 4.4(A) analysis and its consideration of his defamation claim in its due process analysis. In my view, the two-step analysis should be applied to the same claim for consistency's sake and to avoid any possibility of error. It is conceivable that the acts alleged in the first of two claims against a single defendant would fail to provide a basis for personal jurisdiction under the first prong, whereas the acts alleged in the second claim would fail to provide a basis for personal jurisdiction under the second prong; in such a case, one could argue that the trial court would lack personal jurisdiction over *both* claims.

Second, I am troubled by the majority's conclusion that Trial Rule 4.4(A)(2) applies to Brockman's interference claim, specifically that Kravic's alleged interference with his parental relationship constitutes a "personal injury" and that the publication of Kravic's letters in Indiana constitutes a jurisdictional "act" under the rule. In my view, Kravic's contacts with Indiana more properly fall under Trial Rule 4.4(A)(4), in that he "suppl[ied] services rendered … in this state" by writing the letters to

strike portions of Kravic's appellate brief is denied. Kravic's motion to strike portions of Brockman's appendix is moot, as the materi-

Guerrero's attorney that are the basis for Brockman's claims.

Nevertheless, I agree with the majority's conclusion that the trial court has personal jurisdiction over Kravic and that the assertion thereof would not offend "traditional notions of fair play and substantial justice." *See Anthem,* 730 N.E.2d at 1233–34. Therefore, I concur in result.

als in question, documents from the proceeding involving Brockman and Guerrero, were not necessary to our resolution of this appeal.