**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 27 2014, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ALAN D. WILSON**
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JARO MAYDA II, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 34A05-1403-CC-101 |
| | ) | |
| MELINDA D. BARNETTE, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable George A. Hopkins, Judge
Cause No. 34D04-1308-CC-702

**August 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

## STATEMENT OF THE CASE

Jaro Mayda II appeals from the trial court's order granting Melinda D. Barnette's motion to dismiss Mayda's complaint against her alleging fraud, defamation, and the failure to repay a loan purportedly established by oral agreement. Concluding that Mayda has not established that the trial court committed prima facie error by dismissing the complaint on jurisdictional grounds, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mayda, an Indiana resident and physician maintaining an office in Kokomo, Indiana, alleged in his complaint that he and Barnette, an Ohio resident, began a social and personal relationship sometime in 2003 continuing until sometime in the spring of 2013. According to Mayda's affidavit, during the relationship, Barnette called him by telephone between 300 and 500 times, sent emails to him between approximately 750 and 1000 times, and visited him in Indiana approximately ten times. On those ten occasions that Barnette personally met with Mayda in Indiana, he gave her money he now alleges was an informal loan from him to her. He claims that the money he gave her was for college tuition and for necessary medical treatment and expenses. Mayda alleges that the total amount of money he loaned to Barnette over the years was $27,000, and that she had orally agreed to repay him after she graduated from college and became employed.

According to Mayda, the relationship eventually soured, and near the end of their relationship he learned that Barnette had never been diagnosed with cancer, which allegedly was the basis for the money needed for medical treatment. According to the complaint, Barnette called Mayda in 2011 and 2012 leaving voice mail messages

2

acknowledging that she owed him $27,000, and that she wished to meet with him personally to repay him. Mayda contends that Barnette has not repaid him despite his requests that she do so.

Subsequently, Mayda sought and obtained a protective order against Barnette in another court in Howard County on April 15, 2013. Mayda alleges that Barnette made threatening phone calls and sent threatening email messages to him in Kokomo, some of which indicated her future intent to possibly communicate disparaging information about him to embarrass him through the use of the local media. He contends that in the protective order matter, Barnette has had several attorneys appear for her and request continuances of the matter, but they have not objected to that court's exercising personal jurisdiction over her. However, there is no evidence in the record that Barnette personally appeared in an Indiana court.

Later, Mayda filed a civil complaint against Barnette on August 29, 2013, and Barnette's counsel entered his appearance on her behalf and filed a motion to dismiss the complaint on October 1, 2013, claiming a lack of personal jurisdiction. Mayda responded to the motion to dismiss by affidavit, which was filed on October 18, 2013. The trial court held a hearing on the motion, took the matter under advisement, and later granted Barnette's motion to dismiss. Mayda now appeals.

## DISCUSSION AND DECISION

We first note that Barnette has not filed a brief. "In such a case, we do not undertake the burden of developing arguments for the appellee, but instead, applying a less stringent standard of review, may reverse the trial court if the appellant establishes prima facie

3

error." *Everette v. Everette*, 841 N.E.2d 210, 212 (Ind. Ct. App. 2006) (citing *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind. Ct. App. 2002)). Prima facie error "means at first sight, on first appearance, or on the face of it." *Id.*

The motion to dismiss was granted on the basis that Barnette's contacts with Indiana were not sufficient to confer personal jurisdiction over her. "Personal jurisdiction is a question of law." *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965 (Ind. 2006). "As with other questions of law, a determination of the existence of personal jurisdiction is entitled to de novo review by appellate courts." *Id.* "We do not defer to the trial court's legal conclusion as to whether personal jurisdiction exists." *Id.* "However, personal jurisdiction turns on facts, typically the contacts of the defendant with the forum, and findings of fact by the trial court are reviewed for clear error." *Id.*

"Because Indiana state trial courts are courts of general jurisdiction, jurisdiction is presumed." *Davis v. Simon*, 963 N.E.2d 46, 51 (Ind. Ct. App. 2012) (quoting *Everdry Mktg. & Mgmt., Inc. v. Carter*, 885 N.E.2d 6, 10 (Ind. Ct. App. 2008)). "The party contesting jurisdiction bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint." *Id.* "The Due Process Clause of the Fourteenth Amendment requires that before a state may exercise jurisdiction over a defendant, the defendant must have 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *LinkAmerica*, 857 N.E.2d at 967, quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal quotation omitted)).

Furthermore,

"[a] single contact with the forum state may be sufficient to establish specific jurisdiction over a defendant, if it creates a 'substantial connection' with the forum state and the suit is related to that connection." *Id*. (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)). "But a defendant cannot be haled into a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.'" *Id*. (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. 2174 (internal quotation marks omitted) (citing *Helicopteros*, 466 U.S. at 417, 104 S. Ct. 1868; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980))).

*Davis*, 963 N.E.2d at 52.

In assessing whether the exercise of personal jurisdiction over a defendant would violate the Due Process Clause, "a person must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brockman v. Kravic*, 779 N.E.2d 1250, 1256 (Ind. Ct. App. 2002) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945)). Also, a defendant's contacts must "consist of some action by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id*. (citing *Hanson v. Denckla*, 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). "Only the purposeful acts of the defendant, not the acts of the plaintiff or any third parties, satisfy this requirement." *Id*.

*Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 15 (Ind. Ct. App. 2014).

"Indiana's long arm statute, which Indiana courts have held intended to extend personal jurisdiction to the limits permitted under the due process clause of the Fourteenth Amendment, provides that a nonresident may be subject to the jurisdiction of the Indiana courts if certain conditions are met." *Mart v. Hess*, 703 N.E.2d 190, 192 (Ind. Ct. App. 1998) (citing Ind. Trial Rule 4.4(A); *Brokemond v. Marshall Field & Co.*, 612 N.E.2d 143,

145 (Ind. Ct. App. 1993)). Here on appeal, Mayda argues that Barnette's conduct falls under Trial Rule 4.4(A)(1)&(8), which provide as follows:

> Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:
>
> . . .
>
> (1) doing any business in this state;
>
> . . .
>
> (8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state.

Therefore, we must assess the nature of Barnette's contacts. "[A] defendant's contacts must 'consist of some action by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Wolf's Marine*, 3 N.E.3d at 15 (quoting *Brockman v. Kravic*, 779 N.E.2d 1250, 1256 (Ind. Ct. App. 2002)). "When evaluating a defendant's contacts with a forum state, courts should assess: (1) whether the plaintiff's claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agent with the forum state; (3) the foreseeability of being haled into court in that state; (4) who initiated the contacts; and (5) whether the defendant expected or encouraged contacts with the state." *Id.* (citing *Brockman*, 779 N.E.2d at 1257). In *Brockman*, we provided the following explanation of general and specific personal jurisdiction:

6

General personal jurisdiction refers to the ability to be sued for any claim in a state. In order to establish general personal jurisdiction, the court must find continuous and systematic contacts with the forum state such that the defendant could reasonably foresee being haled into court in that state for any matter. General personal jurisdiction may exist if the contacts are substantial, continuous, and systematic. The contacts required for general personal jurisdiction are greater than those needed to establish specific personal jurisdiction.

Specific personal jurisdiction is jurisdiction that stems from the defendant's having certain minimum contacts with the forum state so that the court may hear a case whose issues arise from those minimum contacts. Under this theory, the defendant's isolated contacts with a state that are not enough to establish general personal jurisdiction may be sufficient to allow jurisdiction over any incidents related to those contacts. A single contact with a forum state may be enough to establish specific personal jurisdiction if it creates a substantial connection with the forum state and the suit is based on that connection. However, the act must be purposeful, not random or attenuated or the unilateral activity of another party or a third person.

*Id*. at 1256-57 (citations omitted).

We note at the outset that in response to Barnette's motion to dismiss for lack of personal jurisdiction, Mayda argued that personal jurisdiction existed under Trial Rule 4.4(A)(2),(3), and (8). It was in Mayda's motion to correct error that he raised for the first time the legal argument that personal jurisdiction existed under Trial Rule 4.4(A)(1), conferring personal jurisdiction when the non-resident is doing any business in this state. A party may not raise a new issue for the first time in a motion to correct error. *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000). Although Mayda had responded to the motion to dismiss arguing grounds to establish personal jurisdiction, the argument presented in the motion to correct error raised a different ground, and was supported by the same affidavit that supported his response. Operating under the premise that this is not a new issue, but a different argument under the same issue, we address it here.

Mayda initially claims that the trial court has personal jurisdiction over Barnette because by entering into an oral contract for the loan of money from Mayda, she was doing business in Indiana. Mayda acknowledges under United States Supreme Court precedent that a party's contract with an out-of-state party alone does not automatically establish sufficient minimum contacts in the other party's home forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985). "Instead, when determining whether a contract should give rise to personal jurisdiction in a plaintiff's state, courts should consider facts such as 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. . . .'" *Wolf's Marine*, 3 N.E.3d at 16-17 (quoting *Burger King*, 471 U.S. at 479, 105 S. Ct. at 2185).

Mayda argued that there was an oral agreement for the repayment of $27,000, and that by entering into the agreement, Barnette was subject to personal jurisdiction in Indiana by doing business in this state. However, Mayda's complaint and affidavit revealed that while the aggregate amount of the alleged debt was $27,000, the agreement, if any, was more fluid in nature than necessary to subject Barnette to personal jurisdiction on this ground. Over the course of their ten-year social and personal relationship, Mayda alleges that Barnette was in Indiana to visit him approximately ten times. He alleges that she received money from him on those ten occasions. Mayda contends that the repayment was to be made after Barnette completed college and began to work, yet, by his own account, he also gave her money for medical treatments and expenses. However, Barnette, according to Mayda, was the one who insisted on making the repayment in person.

8

We further note that under Indiana Code section 32-21-1-1(b)(5) (2002) a party may not bring an action involving an agreement that is not to be performed within one year of making the agreement, unless the promise, contract, or agreement on which the action is based is in writing and signed by the party against whom the action is brought. Therefore, looking at the parties' actual course of dealing under our de novo standard of review, Mayda has not met his burden of establishing prima facie error on this ground.

Mayda also alleged in his complaint that Barnette had committed defamation. In support of establishing personal jurisdiction for abusive and harassing conduct, he argued that she had threatened him in Indiana by sending emails and telephone calls causing him to obtain a protective order against her. Mayda also argues that Barnette appeared by counsel in the protective order matter, and did not assert lack of personal jurisdiction in that case. He contends, therefore, that because she has consented to personal jurisdiction in that matter, it establishes minimum contacts with the state sufficient to establish personal jurisdiction in this matter. Whether Barnette has submitted to personal jurisdiction in the other action is an issue that is not before us. We conclude that Mayda has not met his burden of establishing prima facie error on this ground.

With respect to his defamation claim, Mayda alleged that Barnette threatened to communicate disparaging statements about him to the local media in an effort to embarrass him. "In a defamation action, the place of the tort is generally considered the place of publication, i.e., where the defamatory material is communicated to a third party." *Mart*, 703 N.E.2d at 192 (citing *Hoffman v. Roberto*, 578 N.E.2d 701, 705 (Ind. Ct. App. 1991)). Here, Mayda alleged an electronic threat by Barnette to possibly communicate disparaging

statements about him, but there was no evidence to establish that she had actually communicated those statements to a third party. Because Mayda cannot establish an injury from the alleged defamation, he has not met his burden of showing that the trial court committed prima facie error by dismissing Mayda's complaint on this jurisdictional ground.

To the extent that Mayda argues he has suffered personal injury under subsections (A)(2) and (A)(3) of Trial Rule 4.4 subjecting Barnette to personal jurisdiction in Indiana based on the allegation that Barnette committed fraud by obtaining money from him for medical treatment she did not need or undergo, this argument is unpersuasive. The trial court correctly observed that there was no way to determine where Barnette's alleged misrepresentations about her health were made or the nature of their agreement, if any, to repay the loan attributable to those expenses such that personal jurisdiction was established.

CONCLUSION

In light of the foregoing, we affirm the trial court's decision.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.

10