## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 05 2017, 5:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul L. Jefferson
McNeely Stephenson
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
CLAY DANIEL WALTON &
ADAMS, PLC

Theodore W. Walton
Clay, Daniel, Walton & Adams
PLC
Louisville, Kentucky

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Baylor Intermodal, Inc., <br> *Appellant-Defendant,* <br><br> v. <br><br> Chris Hood, Clay Daniel Walton & Adams PLC, and Fast Trak Investment Company, Inc., <br> *Appellee-Plaintiff*. | September 5, 2017 <br><br> Court of Appeals Case No. 10A01-1612-PL-2770 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Bradley B. Jacobs, Judge <br><br> Trial Court Cause No. 10C02-1606-PL-73 |

**Mathias, Judge.**

[1] Baylor Intermodal, Inc. ("Baylor") appeals the Clark Circuit Court's order dismissing this case for lack of personal jurisdiction over all named defendants.

[2] On appeal, Baylor challenges the trial court's conclusion that the defendants' contacts with Indiana were insufficient to establish the "minimum contacts" necessary for the court to exercise personal jurisdiction. Concluding that the trial court's ruling is consistent with the requirements of personal jurisdiction as defined in Indiana Trial Rule 4.4(A) and the Constitutions of this state and the United States, we affirm.

## Facts and Procedural History

[3] Attorney Ted Walton ("Walton") represented Hood in a federal wrongful termination action after Hood's employer, Baylor, terminated him for refusing to haul an overweight load. Hood's termination occurred on May 12, 2011, in Joliet, Illinois. Baylor is an Indiana corporation with its principal office in Indiana. Its drivers haul freight through multiple states.

[4] Hood was a resident of the Commonwealth of Kentucky and was referred to Walton's firm, Clay, Daniel, Walton & Adams, PLC ("CDWA"), by the Louisville Bar Association. CDWA has its sole business office in Kentucky, and all of its fourteen attorneys are licensed in Kentucky. Walton and two other CDWA attorneys maintain Indiana bar licenses. Baylor retained an Indiana law firm after Walton filed a complaint on Hood's behalf with the Occupational Safety and Health Administration ("OSHA") in Chicago on August 8, 2011.

[5] On May 22, 2013, a federal Administrative Law Judge in Louisville, Kentucky, found that Baylor had inappropriately terminated Hood. Baylor sought review

of the ALJ's findings by an Administrative Review Board in Washington, D.C. The Board upheld the ALJ's determination on December 4, 2015.

[6] On January 29, 2016, Baylor filed a Petition for Review of the Board's decision with the United States Court of Appeals for the Seventh Circuit in Chicago. While the Seventh Circuit appeal was pending, Hood met with Baylor's president, Mark Fessel ("Fessel"), on or about March 17, 2016, in Elizabethtown, Kentucky. At this point in the proceedings, mediation of the controversy had stalled, and Baylor was facing bankruptcy. Hood was also unemployed and in financial distress. Without attorneys for either side present, they entered into an agreement purporting to settle the entirety of the disagreements between them. Two more meetings between Fessel and Hood were held at Baylor's offices in Indiana in March and April 2016. The writings produced in these meetings stated Baylor would not be a party to any attorney fee or lien disputes and that Hood would be responsible for the lien payments.

[7] On March 18, 2016, Walton learned that his client's agreement with Baylor called for Baylor to make settlement payments directly to Hood, in contravention of the contingency fee contract Hood had with Walton. Walton notified Baylor that disbursement of payments to Hood would render Baylor liable for repayment of liens on the proceeds Hood received, which included Walton's lien for attorney fees. Hood had also executed two additional liens,

one with the New Jersey loan-issuing corporation Fast Trak on June 29, 2015. Appellant's App. Vol. 2, pp. 34–42.[1]

[8] On June 24, 2016, Baylor filed the declaratory action in Clark Circuit Court and named Hood, CDWA, and Fast Trak as defendants. Baylor sought the trial court's determination of the parties' rights under the settlement agreement between Baylor and Hood. The complaint specifically asked the court to determine that Baylor was authorized to pay Hood according to the terms of their settlement agreement and that Baylor was not obligated for repayment of liens to CDWA or Fast Trak.

[9] On July 13, 2016, CDWA filed a motion to dismiss and a brief in support in which Walton argued the court should dismiss Baylor's action pursuant to Indiana Trial Rule 12(B)(1)(2)(7), Indiana Trial Rule 4.4(A) and (D), Indiana Trial Rule 19, and, in the alternative, principles of comity and *forum non conveniens*. CDWA also cited the complaint it filed in Jefferson Circuit Court in Kentucky two days earlier, on July 11, 2016, which named all interested parties, including both known lienholders. CDWA argued the Clark Circuit Court should defer to the Kentucky proceedings and explained:

> Indiana courts apply the "most intimate contacts" test to resolve any choice of law issues. *Citing Standard Fusee Corp.*, 940 N.E.2d 810, 815 (Ind. 2010) (*citing W.H. Barber Co. v. Hughes*, 223 Ind.

---

[1] While Fast Trak is named in Baylor's complaint, it did not respond or appear. The final lien was between Hood and a family member, William Miller ("Miller") of Kentucky. Miller is not named in Baylor's complaint, and Baylor cites a release signed by Miller on March 31, 2016. Appellant's App. Vol. 2, p. 160.

570, 63 N.E.2d 417, 423 (Ind. 1945))…. The engagement agreement between CDWA and Hood was a contract between Kentucky residents, negotiated in Kentucky, signed in Kentucky, and performed in Kentucky. The purported settlement agreement between Baylor and Hood was negotiated and signed at a Cracker Barrel in Elizabethtown, Kentucky. It is clear Kentucky law applies.

Appellant's App. Vol. 2, pp. 53–54.

[10] On September 16, 2016, Baylor responded to CDWA's motion to dismiss with a motion for default or summary judgment. Baylor argued that the court should deny CDWA's motion to dismiss because personal jurisdiction over CDWA was established by Walton's minimum contacts with the state. Appellant's App. Vol. 3, p. 3. Those contacts included Walton's correspondence with Baylor's counsel, his membership with the Indiana bar, and "purposeful acts" Walton directed toward an Indiana entity. Appellant's App. Vol. 3, pp. 5–6. Baylor argued the present controversy arose from its settlement agreement with Hood, and not from the initial OSHA complaint and proceedings. Baylor believed its settlement agreement with Hood resolved the federal controversy and was therefore the proper basis for jurisdictional analysis. That settlement agreement "is between Hood, a Kentucky resident, and Baylor, an Indiana corporation. [The] agreement was primarily negotiated in Indiana." Baylor came to the opposite conclusion regarding CDWA's *forum non conveniens* argument and the application of Indiana's "most intimate contacts" test:

The settlement agreement [with Hood] was performed by Baylor in Indiana. The subject matter of the settlement agreement is for

the payment by an Indiana corporation of funds to a Kentucky resident, making the Indiana party at a higher risk for enforcement actions…. [A]lthough the parties are split between Kentucky and Indiana, the rest of the factors weigh in favor of adjudicating this matter in Indiana.

Appellant's App. Vol. 3, p. 10.

[11]     On October 5, 2016, the trial court heard argument by Walton and counsel for Baylor. Hood appeared without counsel, and Fast Trak failed to appear or otherwise respond. On November 7, 2016, the trial court ruled in favor of CDWA, dismissing the matter in its entirety for lack of personal jurisdiction over all named defendants and denying Baylor's motions for default or summary judgment. The trial court issued the following conclusions of law as to personal jurisdiction: (1) CDWA's occasional legal presence in Indiana and the fact that several of the firm's attorneys are licensed in Indiana do not constitute "continuous and systematic" contacts with the forum state; and (2) specific jurisdiction may not be conferred because Walton did not engage in "significant 'suit-related' conduct" putting him on notice that CDWA could be haled into Indiana courts, as due process requires. The trial court concluded that adjudicating the rights of co-defendants Hood and Fast Trak without a finding of personal jurisdiction over all parties would unfairly prejudice any rights of CDWA, and moreover would be void for lack of personal jurisdiction over CDWA.

Baylor now appeals the trial court's judgment.[2]

## Standard of Review

The central issue on appeal is whether the trial court erred in determining it lacked personal jurisdiction over CDWA. Personal jurisdiction is a question of law we review *de novo. LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965 (Ind. 2006). Indiana state trial courts are courts of general jurisdiction; therefore, jurisdiction is presumed. *Everdry Mktg. and Mgmt., Inc. v. Carter*, 885 N.E.2d 6, 10 (Ind. Ct. App. 2008). Unless the court's lack of jurisdiction is apparent on the face of the complaint, the party contesting jurisdiction bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence. *Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 15 (Ind. Ct. App. 2014)*. The trial court's legal conclusion as to whether personal jurisdiction exists is not entitled to deference on appellate review; however, to the extent personal jurisdiction turns on facts, the trial court's findings of facts are reviewed only for clear error. *LinkAmerica*, 857 N.E.2d at 965. Here, the trial court made extensive findings of facts regarding the nature of the CDWA's contacts with the state of Indiana. Reversal by this court will result only if the facts in the record do not directly or indirectly support the trial court's findings. *Fischer v. Heymann*, 12 N.E. 3d 867, 870 (Ind. 2014).

---

[2] Only CDWA filed a motion to dismiss for lack of personal jurisdiction. Hood received Baylor's complaint and appeared before the trial court without counsel. Fast Trak did not respond or appear.

# Discussion and Decision

[14] Personal jurisdiction relates to the authority of an Indiana court to include a person in its adjudicative process and to subsequently issue a valid judgment over that person. *Boyer v. Smith*, 42 N.E.3d 505, 509 (Ind. 2015). A jurisdictional challenge by an out-of-state defendant requires a court to address the foundational question of its power to act. *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994). Indiana Trial Rule 4.4 is the equivalent of the state's long-arm statute and lists activities that often support personal jurisdiction. However, Indiana courts may also "exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." T.R. 4.4(A). The Indiana Supreme Court has interpreted the "any basis" provision of the rule to mean that analysis of personal jurisdiction in this state mirrors federal "minimum contacts" analysis. *Boyer*, 42 N.E.3d at 509 (citing *LinkAmerica*, 857 N.E.2d at 967). Before an Indiana court may properly assert personal jurisdiction over a defendant, the Due Process Clause of the Fourteenth Amendment requires the defendant have "certain minimum contact with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *LinkAmerica*, 857 N.E.2d at 967 (citing *International Shoe Co. v. Washington*, 362 U.S. 310, 316 (1945)). Minimum contacts include acts defendants themselves initiate within or without the forum state that create a substantial connection with the forum state itself. *Boyer*, 42 N.E.3d at 509 (Ind. 2015); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Due process requires that potential out-of-state defendants are able to

predict what conduct constitutes "minimum contacts" and will lead to their inclusion in the jurisdiction of Indiana courts. *Boyer*, 42 N.E.3d at 509 (citing *Burger King*, 471 U.S. at 472).

[15] Personal jurisdiction can be general or specific. *Simek v. Nolan*, 64 N.E.3d 1237, 1242 (Ind. Ct. App. 2016). "If the defendant's contacts with the state are so 'continuous and systematic' that the defendant should reasonably anticipate being haled into the courts of that state for any matter, then the defendant is subject to general jurisdiction, even in causes of action unrelated to the defendant's contacts with the forum state." *LinkAmerica*, 857 N.E.2d at 967 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n. 9 (1984)). If the defendant's contacts with the state are not "continuous and systematic," the defendant may be subject to specific jurisdiction "if the controversy is related to or arises out of the defendant's contacts with the forum state." *Id.* (citing *Helicopteros*, 466 U.S. at 414 & n. 8).

[16] In this case, the parties disagree on the existence of both general and specific personal jurisdiction.

## A. General Personal Jurisdiction

[17] General personal jurisdiction refers to the ability to be sued for any claim in a state. *Anthem Ins. Companies, Inc. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1234 (Ind. 2000). The contacts required for general personal jurisdiction are greater than those needed to establish specific personal jurisdiction. *Helicopteros*, 466 U.S. at 414–15. The defendant's contacts in the forum state must be

substantial, continuous, extensive and systematic. *Anthem Ins.*, 730 N.E.2d at 1235. If such contacts between an out-of-state defendant and the forum state exist, the defendant is "constructively present" in the state and no fundamental unfairness results from requiring the defendant to appear in a forum state court. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003).

[18]     Baylor argues Indiana's general jurisdiction over CDWA is established by CDWA's business operations in Indiana. Appellant's Br. at 10. Indiana Trial Rule 4.4(A)(1) states "[a]ny person or organization that is a nonresident of this state…submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent: doing any business in this state."

[19]     Walton's affidavit in support of CDWA's motion to dismiss estimated 98% of the firm's legal matters arise in Kentucky. Appellant's App. Vol. 2, p. 209. CDWA does not advertise nor maintain an office in Indiana. *Id.* It is a Kentucky Limited Liability Company and maintains one office in Louisville, Kentucky. *Id.* Baylor asks us to find from these facts that — however minimal — CDWA "does business" in the state sufficient for the firm to be sued for any matter in Indiana courts. T.R.4.4(A)(1).

[20]     Such a mechanical approach to the minimum contacts test we have applied since *International Shoe* defeats the purpose of what the due process clause seeks to ensure — the "fair and orderly administration of law," and the ability of out-

of-state defendants to "reasonably anticipate being haled into the courts of [a] state for any matter." *Davis v. Simon*, 963 N.E.2d 46, 51 (Ind. Ct. App. 2012) (citing *Helicopteros*, 466 U.S. at 415 n. 9, 104 S. Ct. 1868). CDWA's minimal business presence in Indiana is insufficient to meet the "continuous and systematic" contacts standard required for general jurisdiction to be proper.

[21] Baylor frames the fact that three CDWA attorneys maintain Indiana bar licenses as a separate issue for jurisdictional consideration. The Indiana Supreme Court addressed a similar question of general jurisdiction over a Kentucky attorney in *Boyer*. In that case, an attorney was sued as an individual in an Indiana court for — among other charges — prior malicious prosecution of Indiana plaintiffs in a Kentucky state court. *Boyer*, 42 N.E. 3d at 507. Whether the attorney was licensed to practice in Indiana was a critical question in that case because it contributed to the determination of whether the business she conducted in Indiana made her "constructively present" in the state. *Id.* at 508. The attorney did not have an Indiana bar license nor sufficient minimum contacts with Indiana, although her business dealings and representation of a nonresident client in a federal matter had taken her to Indiana. *Id.* The court concluded her presence *doing business* in the state was insufficient to convey general jurisdiction over her. *Id.*

[22] In the present controversy, a nonresident law firm is the named defendant contesting Indiana's jurisdiction, as opposed to an individual attorney. Walton's Indiana bar licensure and his ability to conduct business in Indiana are factors that distinguish him from the attorney in *Boyer*. This distinction

informs our analysis of whether CDWA's business contacts with Indiana make the firm "constructively present" in the state. But Walton's Indiana bar licensure is not controlling under Indiana Trial Rule 4.4(A)(1). Despite three CDWA attorneys being *able* to practice law in Indiana, CDWA's business with Indiana is neither extensive nor substantial, and therefore, the firm does not have sufficient minimum contacts with Indiana that establish general jurisdiction here.

Furthermore, the Indiana Supreme Court noted in *Boyer* that since *International Shoe*, general jurisdiction has played a reduced role, compared to specific personal jurisdiction, in modern jurisdictional analysis. *Boyer*, 42 N.E.3d at 508. (quoting *Daimler AG v. Bauman* – U.S. –, 134 S.Ct. 746, 755 (2014)). Because Baylor also disputes the determination that Indiana cannot establish specific jurisdiction over CDWA, we now turn to an analysis of whether CDWA engaged in suit-related contacts with the state of Indiana, giving rise to the present controversy.

## B. Specific Personal Jurisdiction

A state may exercise specific jurisdiction when a defendant has purposefully availed itself of the privilege of conducting activities within the forum state and the controversy relates to or arises out of those activities. *LinkAmerica*, 857 N.E.2d at 967 (citing *Burger King*, 471 U.S. at 474–75). In other words, specific jurisdiction depends on a defendant taking some action or causing some injury within the state to establish a minimum contact or substantial connection there. *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014). Analysis of minimum contacts

"focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 1121. In particular, analysis focuses on a defendant's contacts within the state — and not simply with people who reside there. *Id.* When evaluating an out-of-state defendant's contacts with the forum state, a court should consider the following:

> (1) whether the plaintiff's claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agent with the forum state; (3) the foreseeability of being haled into court in that state; (4) who initiated the contacts; and (5) whether the defendant expected or encouraged contacts with the state.

*Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 15 (Ind. Ct. App. 2014). A single contact with the forum state may be sufficient to establish specific jurisdiction if it creates a "substantial connection" with the forum state and the controversy is related to that connection. *Simek*, 64 N.E.3d at 1242–43 (citing *McGee v. Int'l. Life Ins. Co.*, 355 U.S. 220, 223 (1957)). "Random, fortuitous, or attenuated contacts or … the unilateral activity of another party or of a third person" are not sufficient to establish specific jurisdiction over an out-of-state defendant. *Id.* at 1243 (quoting *Burger King*, 471 U.S. at 476–77 (internal citation omitted)).

[25]   Incorporating federal clarifications into Indiana law, personal jurisdiction over CDWA requires that the firm have minimum contacts and substantial connections within the state that create or contribute to the controversy at hand. Those contacts and connections must arise from CDWA's own conduct within or directed into Indiana. We therefore consider whether CDWA's suit-related

conduct established minimum contacts within Indiana and gave rise to Baylor's claim.

[26] Jurisdictional analysis at the trial court level properly focused on CDWA's contacts with Indiana during the underlying federal wrongful termination case. CDWA's relationship with Baylor's Indiana counsel began when Hood was referred to Walton by the Louisville Bar Association. On Hood's behalf, Walton filed a wrongful termination complaint with the Occupational Safety and Health Administration in Chicago. Appellant's App. Vol. 2, pp. 74–88. During the proceedings that followed, Walton corresponded by phone and email with Baylor's Indiana counsel. In *Boyer,* the Indiana Supreme Court's considered the jurisdictional effect of an out-of-state attorney's correspondence with Indiana parties during underlying federal litigation:

> Attorney Cassidy [the Kentucky attorney]'s contacts with Indiana are merely products of her relationship to plaintiffs… and are not products of her own intentional conduct. …She corresponded with an Indiana attorney and served documents to an Indiana law office only because the Federal Rules of Civil Procedure required her to do so in order to adequately represent [her client] in the Kentucky lawsuit. … Indeed, if we took away Cassidy's relationship with [the opposing party and her client], she would have absolutely no relevant contacts within Indiana. Her "suit-related conduct" of representing [her client] in federal court in Kentucky created no contact or connection within Indiana other than the fact that a plaintiff resided here. Her connection to Indiana resulted from the actions of others – and as *Walden* emphasizes, plaintiffs' or third parties' actions cannot serve as the only link between a defendant and a forum state. *Walden*, 134 S.Ct. at 1121.

*Boyer*, 42 N.E.3d at 511–12. Likewise, Walton's suit-related contacts with Indiana were products of his relationship with Hood and counsel for Hood's former employer, Baylor. The trial court was correct in determining that those contacts were part of Walton's "zealous prosecution" of his Kentucky client's federal matter and, alone, do not indicate CDWA intentionally availed itself of Indiana's jurisdiction.

[27] We also consider Walton's contacts with Indiana when the wrongful termination case was on appeal before the United States Court of Appeals for the Seventh Circuit in Chicago. On March 18, 2016, counsel for Baylor notified Walton and the Seventh Circuit mediator that Baylor's president, Mark Fessel, and Hood had met and "resolved this dispute to their satisfaction."[3] Appellant's App. Vol. 2, p. 133. A settlement agreement and two clarifying addendums were signed by Fessel and Hood on March 17 in Elizabethtown, Kentucky, and on March 18 and April 4 at Baylor's Indiana office, respectively. *Id.* at 31–33. Walton advised Baylor's counsel on March 21 of his attorney lien on any payments Baylor had made or planned to make to Hood. *Id.* at 144. When Baylor's counsel notified Walton of its client's intention to pay Hood directly, Walton asserted his right to the attorney lien in an email dated March 23, 2016. *Id.* at 142.

---

[3] The status of the Seventh Circuit federal appeal is unknown. The record indicates Baylor's counsel notified the Seventh Circuit mediator of Baylor's intention to move to dismiss the appeal, but whether that motion was filed is a fact not included in the record.

[28] There is disagreement between the parties about the jurisdictional effect of Walton's contacts with Baylor's counsel after March 18, 2016, when Baylor believed the federal matter was settled. Appellant's Br. at 14. Baylor argues that Walton's Indiana bar license distinguishes him from the Kentucky attorney in *Boyer* and should lead the court to conclude Walton has overall contacts with Indiana sufficient to exercise specific jurisdiction over his firm. *Id.* It does not.

[29] The fact that Walton and two other CDWA attorneys maintain Indiana bar licenses is unrelated to Walton's representation of his Kentucky client in a federal wrongful termination matter. Being haled into an Indiana court for a controversy arising from the federal matter solely based on Walton's Indiana bar license would not have been foreseeable to CDWA. Baylor argues what gave rise to the present controversy was Walton's choice to "engage with a business and attorneys in Indiana after the underlying representation [of Hood] concluded." *Id*. However, Walton's post-settlement contacts with the forum state were initiated by the unilateral activity of other parties, in this case, Fessel's and Hood's decision to negotiate a settlement agreement without counsel. Specific jurisdiction cannot be established over an out-of-state defendant based on contacts prompted by the unilateral activity of third parties. *Burger King*, 471 U.S. at 476–77.

[30] We agree with CDWA that the present controversy fundamentally arises from an attorney contract and lien between a Kentucky resident and a Kentucky law firm. The fact that Walton corresponded with Baylor's counsel and asserted his right to the attorney lien on Hood's settlement proceeds was due to unilateral

activity by third parties. CDWA's claim that the settlement agreement between Baylor and Hood was an attempt to avoid repayment of Walton's attorney lien is more appropriately addressed by a Kentucky court.

## Conclusion

For the foregoing reasons, we affirm the court's order granting CDWA's motion to dismiss for lack of personal jurisdiction.

Affirmed.

Kirsch, J., and Altice, J., concur.